W. W. Chapman, Administrator of Estate of Pauline Chapman, Deceased and W. W. Chapman, Appellees, v. Deep Rock Oil Corporation, Harry Fleming and Clifford Flood, Appellants.

Term No. 47,017.

Opinion filed February.17, 1948. Released for publication March 23, 1948.

Pope & Driemeyer, of East St. Louis, for appellant.

PHILIP G. LISTEMAN, of East St. Louis, and MILLER & LANDAU, of St. Louis Mo., for appellees; LLOYD MIDDLETON, of East St. Louis, of counsel.

MR. JUSTICE SMITH delivered the opinion of the court.

This is an appeal by Deep Rock Oil Corporation, defendant appellant, to reverse a judgment in favor of W. W. Chapman, administrator of the estate of Pauline Chapman, deceased, and W. W. Chapman, as an individual, plaintiffs appellees. The complaint alleged that the defendant Deep Rock Oil Corporation sold and delivered to defendant Harry Fleming, a distributor of petroleum products, a quantity of liquid represented to be kerosene and that said defendant knew, or should have known, that such liquid would be sold and delivered by Fleming to retailers, for resale to the public; that defendant Harry Fleming thereafter delivered and sold such liquid to defendant Clifford Flood, who operated a filling station and sold kerosene to the public; that defendant Flood thereafter sold a quantity of such liquid to plaintiff intestate as kerosene; that such liquid was not in fact kerosene, nor fit for use as such, but had a flash point of 75° F. and was highly explosive, inflammable and dangerous. The suit was brought against the Deep Rock Oil Corporation, Fleming and Flood; and the complaint was in two counts, the first of which sought damages for the wrongful death of Pauline Chapman, and the second count sought damages for the destruction of furniture and personal effects of plaintiff W. W. Chapman.

The cause was heard by a jury. The court directed a verdict in favor of the defendant Clifford Flood, at the close of the plaintiff's evidence, and directed a verdict in favor of the defendant Harry Fleming, at the close of all of the evidence. The jury returned a verdict on count one in favor of plaintiff W. W. Chapman,

administrator of the estate of Pauline Chapman, deceased, in the amount of $10,000, and in favor of the plaintiff W. W. Chapman as to count two in the amount of $2,000. Defendant Deep Rock Oil Corporation requested a directed verdict at the close of the plaintiffs' evidence, and at the close of all evidence, which were refused, and filed motions for judgment notwithstanding the verdict and for a new trial both of which were also refused. The plaintiff W. W. Chapman also filed a motion for judgment notwithstanding the veridct as to count two, which the court allowed and judgment was entered in favor of the plaintiff as such administrator in the sum of $10,000, and in favor of the plaintiff individually in the sum of $3,100.

The plaintiff, his wife Pauline, and their two minor children lived in a four-room house in East St. Louis, which was located near the filling station operated by defendant Clifford Flood. They had an oil burning stove in the kitchen and a coal heater in the living room. They kept a five gallon can for the storage of kerosene and they normally purchased kerosene from the Flood filling station in a two gallon can. Late in the afternoon of October 31, 1946, Pauline Chapman sent her 12-year-old son to Flood's station with the two gallon can to purchase kerosene. He purchased two gallons of what he thought was kerosene from John Varady, one of Flood's employees. The can was filled from a 55 gallon steel drum, situated in the grease department of the station, which was used for the storage of the kerosene.

The boy took the filled can home and gave it to his mother and she emptied the contents into the five gallon can which was used for storage purposes. She then poured a small amount of the liquid in the two gallon container of her oil stove and took the five gallon can and a small glass into the living room where she was about to start a fire in the coal heating stove. She put paper, kindling and coal in the stove and then

poured some of the liquid from the five gallon can into a small glass and sprinkled the contents over the coal, kindling and paper. She closed the door to the stove, opened the ash door and put a piece of paper in the ashpan and lighted it. Almost instantaneously, there was a terrific explosion which knocked the stove door open, and the flames came out and enveloped her. Her clothes and hair caught fire and she ran from the house and across the street to one of her neighbors. She was badly burned and died at the hospital a few hours later.

The Chapman house also caught fire, and the only evidence introduced showed that the furniture and personal effects of the plaintiff were damaged to the extent of $3,100.

There was no dispute as to the cause of Mrs. Chapman's death and no contributory negligence was established as to her. The sole question raised by this appeal is whether or not there was sufficient evidence to warrant the jury in finding that the Deep Rock Oil Corporation negligently sold the product, which purported to be kerosene, which ultimately reached the hands of Mrs. Chapman and resulted in her death.

Defendant Flood upon learning that the product had caused the explosion immediately stopped the sale of the so-called kerosene and called Mr. Harness, the State Oil Inspector, and the next morning he came and made a test of the liquid in Flood's kerosene barrel. The test showed that the liquid had a flash point of 75° F. The following day a similar test was made of the liquid in the tank of the oil stove at the Chapman house and it was determined that the flash point of the liquid was 78° F. Soon afterwards the contents of the compartment of Fleming's truck, which held 306 gallons, were examined and found to have a flash point of 85°F. It was shown that the kerosene which Fleming had purchased from the Deep Rock Oil Corporation had been placed in the 306 gallon compartment of his tank truck. It was also shown that the only means of

emptying this compartment was through a faucet on the side of his truck and that it was from this faucet that the drum in the Flood filling station was filled.

After the tests of the liquid in the Fleming truck, the Flood filling station, and the tank on the oil stove in the Chapman home had been completed by Mr. Harness, he, Flood and Fleming went to the Deep Rock Oil Corporation bulk plant and asked to examine its kerosene. Upon their arrival at the Deep Rock bulk plant they were informed that tank No. 1233, from which Fleming had obtained 306 gallons of range oil the day preceding the explosion, had been emptied and refilled and it was impossible to obtain a test of the product which the Deep Rock Oil Corporation had sold Fleming.

The terms kerosene, range oil and coal oil were used interchangeably throughout the trial, and it was shown there was a slight difference between range oil and kerosene, but this difference is considered of no importance. The regulations governing the sale of kerosene in Illinois require that it should not have a flash point lower than 115° F., and any such product having a lower flash point is declared to be of inferior quality. There is no controversy over the fact that a liquid with a flash point of 83° F. or lower, is highly volatile, inflammable and explosive. The Illinois Revised Statutes, chapter 104, secs. 1 to 18, inclusive [Jones Ill. Stats. Ann. 93.30 *et seq.*], provide that no motor fuel (a liquid which, either by itself, or mixed with other substance, is capable of operating an internal combustion engine) imported into or received in Illinois, shall be unloaded from its original container, sold or offered for sale or used, until a true sample has been taken therefrom, tested by the oil inspector, and found to meet the requirements of regulations adopted by the Department of Revenue. It is also unlawful for anyone to keep, store, or sell crude petroleum, gasoline or other volatile combustibles or compounds, in such a

manner or under such circumstances as will jeopardize life or property, as provided by Ill. Rev. Stat., ch. 38, par. 351. [Jones Ill. Stats. Ann. 93.12].

It was shown that the Deep Rock Oil Corporation had stored and sold range oil without having it tested as provided by the statutes and regulations made pursuant thereto for more than four years prior to the occurrence here involved, and that no such test had been made of the range oil sold to Fleming.

The Deep Rock Oil Corporation showed that its range oil was tested at the refinery at Cushing, Oklahoma, and shipped in a sealed car to East St. Louis, from which car it was pumped into tank No. 1233, which was used only for the storage of range oil. It showed that on October 19, 1945, it received a shipment of 8,100 gallons of range oil in car OZKX 105 at its bulk plant in East St. Louis, and that it was unloaded the next day. The defendant produced records that purported to show that car OZKX 105 was loaded at the refinery at Cushing on October 15, 1945, and that after the car had been loaded its contents were examined at the refinery by taking a test from the bottom of the car and from the center of the car and found to have a flash point of 145° F. The defendant's records also showed that shipments of range oil previously placed in tank No. 1233 had also been tested at the refinery and found to be of standard quality. The evidence showed the mechanical set-up for pumping the product from the railroad tank car to the storage tank located at the bulk station of the defendant, and indicated that there was no way in which the product being emptied could be mixed with a different product from some other source.

On October 29, 1945, Fleming purchased 306 gallons of range oil from the Deep Rock Oil Corporation bulk station and it was supplied from tank No. 1233.

There was no direct evidence that the range oil delivered by the defendant to Fleming was contami-

nated when purchased by him. The plaintiff's case is based upon circumstantial evidence. The tests conducted by Oil Inspector Harness which showed that the range oil in the oil stove in the Chapman house, the range oil in the steel drum at Flood's filling station and the range oil in the 306 gallon compartment of Fleming's truck all had a flash point of 85° F. or lower. The defendant admitted that its range oil had not been tested by the State Oil Inspector and none of the range oil from which Fleming had been supplied was available to be tested following the explosion. The fact that the defendant had violated the statute in failing to have its products tested by the State Oil Inspector did not make it liable *per se,* but this fact coupled with the fact that none of the product sold was available for testing after the explosion were circumstances which were important to the jury in reaching its verdict.

We are of the opinion that the trial court properly refused to direct a verdict in favor of the defendant Deep Rock Oil Corporation and properly refused to allow its motion for judgments notwithstanding the verdicts. Considering all of the evidence in its aspects most favorable to the plaintiff, together with all reasonable inferences therefrom, and rejecting all contradictory evidence, there was sufficient evidence for the case to go to the jury (*Blumb v. Getz,* 366 Ill. 273, 274). Controverted facts may be said to be established when the evidence, though circumstantial, creates a greater or less probability leading, on the whole, to a satisfactory conclusion. (*Rosenfield v. Industrial Com.,* 374 Ill. 176, 183.) If facts and circumstances are proved which lead the mind with certainty to the conclusion that other facts and circumstances are true, those facts and circumstances may be accepted and acted upon, by the jury as true. (*Peoria & P. U. R. Co. v. Clayberg,* 107 Ill. 644, 650.) The facts and circumstances of this case were such that the jury was justified in finding that the range

oil in question was contaminated when it was delivered by the defendant to Fleming.

We are also of the opinion the trial court properly refused to grant the defendant a new trial. The determination of the weight of the evidence and the credibility of witnesses is a jury function with which the court will not interfere, unless the verdict is clearly and palpably against the manifest weight of the evidence. Whether the contamination of the oil occurred while it was in the possession of the defendant was a proper question for the jury to decide.

The defendant contends that the case of *Black v. Texas Co.*, 247 Ill. App. 301, is pertinent to the case at bar. We do not consider that this case is in point as the proof in the *Black* case showed that there had been a test made by the State Oil Inspector and the kerosene was found to meet legal standards.

The defendant contends that the trial court erred in sustaining the plaintiff's motion for judgment notwithstanding the verdict on count two and thereby increasing the same from $2,000 to $3,100. Under the undisputed evidence the plaintiff, if entitled to recover at all, was entitled to recover his full damages of $3,100, which were fully covered in the pleadings. The plaintiff testified that the value of his personal property destroyed by the fire was $3,100, and an itemized list of articles destroyed and their value was prepared by the plaintiff and it was admitted into evidence with the consent of the defendant. It was in our opinion proper for the trial court to mould the verdict under count two to meet the evidence in the case and to enter judgment notwithstanding the verdict for the amount which the evidence showed the plaintiff was entitled to recover. (*Paschall v. Reed,* 320 Ill. App. 390, 396.)

We find no error in the trial of this cause and for reasons assigned the judgment of the trial court is affirmed.

*Affirmed.*

CULBERTSON, J., concurs.