Loren Neighbors *et al. ex rel.* American States Insurance Company, Plaintiffs-Appellees, *v.* The City of Sullivan *et al.*, Defendants.— (Rockwell Manufacturing Company, Defendant-Appellant.).

(No. 12137;

Fourth District—August 21, 1975.

SIMKINS, J., dissenting.

Samuel C. Patton, of Springfield, for appellant.

Clausen, Miller, Gorman, Caffrey & Witous, of Chicago (Frank L. Schneider, James T. Ferrini, and William J. Sneckenberg, of counsel), for appellees.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

On January 27, 1967, the home of Loren and Mary Neighbors in Sullivan, Illinois, was destroyed by fire. To recover funds paid out as a consequence of damage caused by that fire, the Neighbors' insurance company brought suit against the City of Sullivan and Rockwell Manufacturing Company, charging that a Rockwell gas regulator affixed by the city to the Neighbors' premises had malfunctioned, causing a buildup of gas, an explosion, and the resultant fire. The complaint included counts based upon negligence and strict liability in tort. The jury returned a general verdict for the plaintiff and Rockwell only appealed as to its share of the liability. We affirm.

The evening of the explosion and fire, Sullivan was enveloped in ice. Power lines were down, leaving the Neighbors' home without electricity. Stratton Hammond, testifying as an expert for the plaintiffs, expressed an opinion that the regulator had frozen in an open position due to a buildup of ice which occurred when water dripped down off the eaves of the house, flowed over the top of the ice-covered regulator, and entered the regulator through an atmospheric control vent on top of the regulator. Hammond went on to theorize that once frozen, the regulator could no longer performed its intended function of controlling the flow of gas into the home, and pressure from the city gas lines forced a large amount of gas through the regulator. The furnace, protected by a small appliance regulator, did not draw or emit excess gas. However, the water heater had no such regulator. The pilot on that appliance suddenly flared up under the excess gas pressure, extinguishing itself. Gas continued to rush through the water heater and into the home, where it was eventually ignited by the pilot light in the furnace.

Hammond further testified that, in his opinion, water could not have entered the regulator and caused it to freeze open if the atmospheric control had been vented down or to the side, rather than up as it was on this model. Testimony from defendant Rockwell's own witness indicated that Rockwell had been manufacturing regulators vented down in 1955, when the one in question was manufactured. Hammond further testified that even a regulator venting upward could have been protected against the entry of water through the use of a simple protective cap.

To contradict Hammond's hypothesis, the defense introduced expert

testimony that Rockwell regulators had never been known to freeze either open or shut, that the regulators had been known to function perfectly even under snow, and that the gas pressure, temperature and vibration within the regulator would make it virtually impossible for water to freeze in the unlikely event of its entry into the regulator. Despite this testimony, the jurors were apparently persuaded by Hammond's reconstruction of events and his systematic rejection of other possible causes for the explosion.

■■ The defense argues that Hammond's hypothesis was based on a fact not in evidence, that is, a buildup of ice on top of the regulator. While it is true there was no direct, competent evidence as to that fact, "[i]f facts and circumstances are proved which lead the mind with certainty to the conclusion that other facts and circumstances are true, those facts and circumstances may be accepted and acted upon, by the jury as true." (*Chapman v. Deep Rock Oil Corp.*, 333 Ill.App. 529, 536, 77 N.E.2d 883, 887.) There was substantial evidence from witnesses for both the plaintiffs and the defendants that the City of Sullivan was immersed in ice on the evening of the explosion; from this fact Hammond and the jurors could have been lead to assume with certainty that the regulator on the Neighbors' house, exposed as it was to the elements, was similarly coated.

The defense also objected at trial and here objects that since the regulator was badly damaged in the explosion and fire, since Hammond did not view it until 12 days after the fire and performed no tests upon it even then, and since the regulator was not produced at trial, no testimony as to its failure should have been admitted. However, there are numerous cases holding that failure of a machine may be shown by circumstantial evidence and that the machine itself need not be produced at trial. *Spotz v. Up-Right, Inc.*, 3 Ill.App.3d 1065, 280 N.E.2d 23; *Nolan v. Shaf Manufacturing Co.*, 128 Ill.App.2d 19, 261 N.E.2d 209; *Kappatos v. Gray Co.*, 124 Ill.App.2d 317, 260 N.E.2d 443.

■■ In *Belleville National Savings Bank v. General Motors Corp.*, 20 Ill.App.3d 707, 709, 313 N.E.2d 631, 633, the court noted:

"[T]he requirement that the plaintiff establish the precise cause of his injury may, at times, be excused in an action grounded on strict liability in tort *provided the plaintiff establishes some credible basis for the reasonable inference that a condition of the product proximately caused the injury * * *.*" (Emphasis added.)

Also, in *Bollmeier v. Ford Motor Co.*, 130 Ill.App.2d 844, 851, 265 N.E. 2d 212, 217, the court observed that:

"[D]irect or circumstantial evidence which tends to prove that the product failed to perform in the manner reasonably to be

expected in the light of its nature and intended function, such as proof of a malfunction which tends to exclude other extrinsic causes, is sufficient to make a *prima facie* case on this issue."

In the instant case especially, production of the regulator would have been of little assistance to the jury. Since the plaintiffs' claim that the regulator was vented upwards was not disputed at trial, and since plaintiffs had pictures of the regulator taken shortly after the fire which showed the vent pointing upward, production of the regulator itself would have added little to plaintiffs' expert's testimony on that point. Defendant referred repeatedly at trial and in its brief on appeal to the necessity to show that the product when inspected was in the same condition as it was shortly before the accident. The circumstances of the cases cited to support that proposition are quite different from those in this case. Here, there is uncontradicted testimony that between the time when the fire broke out and the time when the regulator could be recovered for inspection, the east wall of a burning house had collapsed on the regulator and a gas fire had started in close proximity to it. By the time the product was recovered after the fire, it was badly damaged, had holes in it, was partially molten, and was clearly not in the condition it was before the fire started. To suggest that plaintiffs have no case because the regulator was damaged in the fire would be to undercut the entire doctrine of products liability.

To buttress his claim that simple design modifications could have averted the malfunction he described, Hammond testified that a can placed over the top of the vent would keep water and ice out of the regulator. He further testified, over defense objection, that he had seen just such an arrangement over regulators on scores of homes in Sullivan. He was allowed, despite continued objection, to identify photographs of cans over vents in Sullivan and the photographs were admitted into evidence.

Appellants argue that it was totally immaterial what other people in Sullivan did with their regulators and note that there was no showing the regulators with cans over them were even the same as or similar to the Rockwell regulator on the Neighbors' home. Plaintiffs-appellees contend this testimony was proper as an illustration of a design alternative.

■■ In the products liability area, Illinois courts have accepted evidence tending to show what is feasible and what defendant knew or should have known. (*Sutkowski v. Universal Marion Corp.*, 5 Ill.App.3d 313, 281 N.E. 2d 749; *Moren v. Samuel M. Langston Co.*, 96 Ill.App.2d 133, 237 N.E. 2d 759.) Hammond explained the purpose and effect, in his opinion, of placing cans over regulators. The trial court judge accepted this evidence

that others had employed the described adjustment and we believe it was within his discretion to do so. We do not find the decision so out of line with reason or the likelihood of prejudice so great as to justify reversal.

■■ Under *Suvada v. White Motor Co.*, 32 Ill.2d 612, 623, 210 N.E.2d 182, 188, plaintiffs were required to prove three things in connection with their strict liability complaint:

> "[T]hat their injury or damage resulted from a condition of the product, that the condition was an unreasonably dangerous one and that the condition existed at the time it left the manufacturer's control."

There was no question but that this regulator was vented upward when it left defendant Rockwell's control. The jury was persuaded that this upward venting was an unreasonably dangerous condition which resulted in damage to the plaintiffs. Here, the plaintiffs offered clear and convincing testimony that no factor other than the failure of defendant's regulator could have caused the explosion and resulting fire, and that design alternatives which were readily available would have averted the damage. The evidence was sufficient to justify a verdict for the plaintiffs on their strict liability count. (*Dunham v. Vaughan & Bushnell Mfg. Co.*, 42 Ill.2d 339, 247 N.E.2d 401.) In view of this holding, we do not find it necessary to consider whether the charge of negligence could also have been supported.

Judgment affirmed.

GREEN, J., concurs.

Mr. JUSTICE SIMKINS, dissenting.

I dissent. The opinion testimony of plaintiff's expert was, in my view, founded in large part upon pure speculation and conjecture. For example, to sustain his theory that water fell upon the ice which coated the regulator Hammond testified "What I am trying to say is that there was a sleet storm which was very thick and it was over that regulator and then there was water connected with this too and the sleet on the house would melt as the house was warm and would fall off the eave *and this was right where the eave was* and that would supply the water in addition to the sleet." (Emphasis supplied.) Hammond then testified: "I don't know whether the eaves hung out over the regulator. No, no, the eaves were gone when I was there but judging from the other houses there and almost all houses have eaves. I know it—." "I am drawing conclusion from the fact there was a type of house in this neighborhood. They are

all more or less similar." It was by this reasoning, supported by no evidentiary fact that Hammond placed the regulator in the precise position under the drip line of the eaves.

Hammond testified that he arrived in Sullivan, Illinois, some 12 days after the incident. Among other things he drove around town and had pictures taken of regulators, the vents of which were covered with coffee cans or washtubs. No householder was called to explain why this was done, nor the success or lack of success attained in avoidance of what risk. Hammond was then asked the following question and gave the following answer:

> "Q. Do you have an opinion on whether there are or were in 1967 any steps taken which could have been taken with respect to a Rockwell Regulator with a vent in an upward position to prevent the occurrence of water into the interior part of the regulator?
>
> A. Yes. There were rather easy ways to overcome the deficiencies of a vent that pointed upward and at the time the thing to do is put a tub, coffee can or any other can like that over *it to keep the ice out of it and that remedy was taken by scores of Sullivan people at this time* and I saw them."

This answer, based on nothing but pure speculation, supplied to the jury Hammond's opinion that it was a commonplace event, not only for water to get into the regulators, but also to freeze once there. This went to the heart of plaintiff's contentions.

The above conclusions were not based upon any facts in evidence. Nor were there any facts in evidence which "lead the mind with certainty" to the conclusion that what Hammond assumed and stated to be facts, were true.

No witness other than Hammond had ever heard of a gas regulator freezing in an open position, and he had never examined a regulator in which this had occurred.

The regulator in question was purchased from Rockwell in 1952, some 15 years prior to the occurrence. It was apparently installed in 1955. The plaintiff testified that he had never had any previous difficulty with the regulator during the years that he had owned the house. Joseph A. Palmershim testified that he had been chief engineer of Rockwell Manufacturing Company for 19 years. The type of regulator in question was manufactured beginning in 1949 and continued until the early 1960's. Probably somewhere in the millions were made. He had never heard of one freezing in the open position or in a closed position.

It is proper for an expert to give an opinion based on facts in evidence.

(*Miller v. Pillsbury Co.,* 33 Ill.2d 514, 211 N.E.2d 733.) Here the opinion was clearly predicated upon speculation and guess. It was error to admit Hammond's opinion. In view of this, and because the verdict is against the manifest weight of the evidence, I would reverse.