LORENE STEWART, Plaintiff-Appellant, v. THE B. F. GOODRICH COM-
PANY, Defendant-Appellee.

Fifth District   No. 5—86—0297

Opinion filed April 9, 1987.

KARNS, P.J., dissenting.

W. Loren Thomson and Rex L. Reu, both of Thomson, Weintraub & Thompson, of Bloomington, for appellant.

Gordon R. Broom and Madelyn J. Lamb, both of Edwardsville, for appellee.

JUSTICE WELCH delivered the opinion of the court:

This is a products liability action commenced by plaintiff Lorene Stewart against defendant B. F. Goodrich Company in the circuit court of Madison County. The circuit court entered summary judgment for defendant. Plaintiff appeals. We reverse and remand.

Plaintiff's complaint alleged as follows: Plaintiff purchased an automobile which had as original equipment four tires manufactured by defendant. On June 11, 1982, plaintiff was driving the vehicle when the right rear tire exploded and blew out, causing the car to go out of control and overturn, injuring plaintiff. The whereabouts of the tire was unknown.

The issue for review is narrowly defined by the parties. The record on appeal includes the affidavit and discovery deposition transcript of Rex Miller, whose status as an expert on the subjects of tires and tire failures is conceded for purposes of this appeal. Plaintiff contends Miller's deposition was sufficient to raise a material question of fact as to whether a defect in the tire in question which existed at the time the tire left defendant's control was a proximate cause of plaintiff's injury. Defendant contends Miller was unable to state the tire in question did not fail as a result of deflation or underinflation which was not present when the tire left defendant's control. Miller rendered his opinion regarding the tire in question without viewing the tire other than as it appeared in 12 photographs of plaintiff's vehicle after the occurrence. Miller also read plaintiff's discovery deposition transcript and defendant's answers to plaintiff's interrogatories and had an external view of the spare tire taken from the trunk of plaintiff's vehicle. The spare tire was also manufactured by defendant and Miller assumed it was of the same type as the tire in question. Miller's affidavit was in pertinent part:

> "3. I have been advised of the facts of the accident *** and have personally examined a companion tire to the one that suddenly deflated.
>
> 4. In my opinion, the tire suddenly deflated and caused the upset of the automobile in which Lorene Stewart was riding which her subsequent injuries [*sic*].

It is further my opinion that said tire was defective at the time of its manufacture and from the time it left the control of its manufacturer in that it separated, causing it to over heat, which caused the sudden deflation and blow out aforesaid."

The critical portion of Miller's deposition testimony follows:

"Q. But can you say simply because the tire went 20 to 30,000 miles that it was due to any one of these causes? Can you rule out, is there anything about what you know about this accident in these pictures and from what you have been told and have examined that would tell you that it absolutely was not caused—a separation of the tire was caused by, assuming it was separation of the tire caused by running in a deflated condition?

A. I'd say any one of those is a distinct possibility.

Q. Including running it in a deflated condition, is that right?

A. Oh, certainly.

\* \* \*

Q. Now if you had the tire you would be able—maybe you answered this question, we'd be able to determine exactly or pretty darn close as to whether it was a manufacturing or a user problem?.

A. That is quite likely, yes.

Q. And without that tire you really are not in a position to say with scientific certainty that the tire was caused to blow out because of a manufacturing defect as opposed to user problems, that is using it in an under-inflated [sic] condition, are you?

A. Only except in the conditions, the knowing what happened in the case, that just simply operating a tire underinflated does not lead to this type of failure.

Q. Well, explain that. What is different about this failure from what would happen if the tire had been operated in some point in its history underinflated?

A. Well, the difference in this case is that for a tire to fail, suddenly deflate from under-inflation [sic] it would have to be almost flat, something which for a long period of time be almost out of control, be impossible to control to that extent and in this case apparently it suddenly became deflated.

Q. So if—so what you are basing that opinion on is the fact that she, that you have no evidence that she had any prior shimmying or unusual movement of the car, is that right?

A. Yes."

Summary judgment should be rendered without delay if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c).) In a products liability case the plaintiff must prove his injury or damage resulted from a condition of the product, that the condition was an unreasonably dangerous one, and that the condition existed at the time it left the manufacturer's control. (*Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 623, 210 N.E.2d 182, 188.) These elements may be proved by circumstantial evidence. (See *Tweedy v. Wright Ford Sales, Inc.* (1976), 64 Ill. 2d 570, 575, 357 N.E.2d 449, 452.) For circumstantial evidence to make out a prima *facie* case, it must tend to negate other reasonable causes or there must be an expert opinion that the product was defective. (*Mateika v. La Salle Thermogas Co.* (1981), 94 Ill. App. 3d 506, 508, 418 N.E.2d 503, 505.) Because liability in a products liability action cannot be based on mere speculation, guess, or conjecture, the circumstances shown must justify an inference of probability as distinguished from mere possibility. However, at the summary judgment stage, the plaintiff is not normally required to prove his case, but must present some facts to support the elements of his claim. (94 Ill. App. 3d 506, 418 N.E.2d 503.) Though Miller could not specify the precise defect present in the tire in question, this was not fatal to plaintiff's case. The requirement that the plaintiff establish the precise cause of his injury may, at times, be excused in an action grounded on strict liability in tort provided the plaintiff establishes some credible basis for the reasonable inference that a condition of the product proximately caused the injury. (*Belleville National Savings Bank v. General Motors Corp.* (1974), 20 Ill. App. 3d 707, 709, 313 N.E.2d 631, 633.) Miller testified that in his opinion, apparently based, *inter alia*, on plaintiff's deposition, the tire in question did not fail as a result of user underinflation but rather was defective in some way at the time it left defendant's control. This was a sufficient showing to avoid summary judgment, and judgment should not have been entered on this record.

Our view of the instant case is supported by *Shramek v. General Motors Corp.* (1966), 69 Ill. App. 2d 72, 216 N.E.2d 244, another automobile tire products liability case. In *Shramek v. General Motors Corp.* summary judgment was affirmed where the plaintiff did not have the tire and offered no expert testimony regarding why it failed. Here expert witness Miller professes to be able to enlighten the jury regarding the existence of a manufacturing defect in the tire in ques-

tion and its relationship to plaintiff's injury in terms of proximate cause. Defendant characterizes this as manufacturing evidence, but we think this contention must be saved for the trier of fact, whose duty is to determine the credibility and weight due expert testimony. See *People v. Bilyew* (1978), 73 Ill. 2d 294, 302, 383 N.E.2d 212, 215.

For the foregoing reasons the judgment is reversed and this cause is remanded to the circuit court of Madison County for further proceedings.

Reversed and remanded.

HARRISON, J., concurs.

PRESIDING JUSTICE KARNS, dissenting:

A reading of Miller's deposition convinces me that he did not have, nor could he reasonably have, an expert opinion, based on any known facts, of the cause of the blowout. Any opinion Miller may have expressed was necessarily based on speculation or conjecture. He testified he relied on no other lay witness in arriving at his opinion. In fact he listed seven possible causes of the blowout, including user-caused defects, such as running into or over objects or operating in underinflated condition.

This tire was original equipment on a 1979 Mercury automobile. It had been driven 33,600 miles at the time of the occurrence. Plaintiff testified in her discovery deposition that she had recently experienced a "shimmying" problem with the car and actually did not know what caused her to lose control of the automobile.

Miller examined the spare tire and found no defect. It is just as likely that the tire that failed was manufactured to the same standards as the spare.

*Shramek v. General Motors Corp.* (1966), 69 Ill. App. 2d 72, 216 N.E.2d 244, cited by the majority, actually supports the defendant. There the court sustained the entry of summary judgment for defendant, stating: "Blowouts can be attributed to myriad causes, including not only the care with which the tires are maintained, but the conditions of the roads over which they are driven and the happenstance striking of damaging objects." 69 Ill. App. 2d 72, 78, 216 N.E.2d 244, 247.

It is true that no expert testimony was present in *Shramek*. But the addition of Miller's testimony here simply adds a superficial gloss of authority that cannot supply the total absence of facts. Bare conclusions, unsupported by any facts, are not sanctioned under the rule of *Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322.