THOMAS SAMANSKY, Plaintiff-Appellant, v. RUSH-PRESBYTERIAN-ST. LUKE'S MEDICAL CENTER *et al.*, Defendants-Appellees.

First District (4th Division) No. 1—89—0195

Opinion filed December 27, 1990.—Rehearing denied January 24, 1991.

Michael P. Casey, of Calumet City, for appellant.

Lord, Bissell & Brook, of Chicago (Leonidas C. Malleris, Hugh C. Griffin, and Nancy Shaw, of counsel), for appellees Rush-Presbyterian-St. Luke's Medical Center and David Shahain.

Kathy P. Fox, of Wildman, Harrold, Allen & Dixon, of Chicago, for appellees Housing Javid, James A. Hunter, Hassan Najafi, Marshall D. Goldin, Cyrus Serry, and Giacomo A. Delaria.

Claussen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago (James T. Ferrini, Lisa Marco Kouba, Richard L. Berdelle, Jr., and Lawrence D. Mason, of counsel), for appellee Deseret Medical, Inc.

PRESIDING JUSTICE McMORROW delivered the opinion of the court:

Plaintiff Thomas Samansky appeals from the trial court's dismissal with prejudice of his complaint against Rush-Presbyterian-St. Luke's Medical Center (hereinafter defendant Rush), several physi-

cians who are members of a professional corporation (hereinafter collectively referred to as defendant physicians) and Deseret Medical, Inc. (hereinafter defendant Deseret). Plaintiff's complaint sought damages for injuries associated with the surgical removal of a central venous pressure catheter (hereinafter CVP line) that had fractured and remained in plaintiff's body following coronary bypass surgery. The coronary bypass surgery, the surgical removal of the remnant CVP line, and the post-operative care associated with these surgical procedures were undertaken by defendant physicians with the assistance of agents or employees of defendant Rush. The CVP line was manufactured by defendant Deseret and sold by defendant Deseret to defendant Rush. Plaintiff's pleading relied upon negligence and the doctrine of *res ipsa loquitur* with respect to all defendants. An additional count, directed solely against defendant Deseret, relied upon principles of strict product liability and also sought the application of *res ipsa loquitur* to that count. Construing the defendants' pleadings as motions to dismiss based on affirmative matter (Ill. Rev. Stat. 1987, ch. 110, par. 2—619(a)(9)), the trial court dismissed the complaint on the ground that *res ipsa loquitur* was not applicable to plaintiff's claims.

Based upon our review of the record, we conclude that plaintiff presented sufficient evidence to create a triable issue of fact, under the principles of *res ipsa loquitur*, with respect to whether any of the defendants exercised negligent control over the instrumentality that proximately caused the injuries for which plaintiff seeks compensation. We further conclude that plaintiff produced sufficient circumstantial evidence in proof of his strict product liability claim to overcome defendant Deseret's motion to dismiss. Accordingly, we reverse the trial court's dismissal of the counts of plaintiff's complaint directed against defendant Deseret (counts I and IV), defendant physicians (count II) and defendant Rush (count III), and remand the matter for further proceedings consistent herewith.

The following factual allegations of plaintiff's complaint, as ultimately amended, are accepted as true for the purpose of reviewing the trial court's dismissal with prejudice. (Ill. Rev. Stat. 1987, ch. 110, par. 2—619(a)(9); see, *e.g., Longust v. Peabody Coal Co.* (1986), 151 Ill. App. 3d 754, 502 N.E.2d 1096.) Defendant physicians performed coronary bypass surgery on plaintiff with the assistance of agents or employees of defendant Rush on October 30, 1980. In the course of this surgery, defendant physicians placed a CVP line in a vein of the plaintiff's heart. A few days after the surgery, on November 3, the defendant physicians directed that the CVP line be removed. The CVP line

fractured during this attempted removal, and a portion thereof remained in plaintiff's body. On November 4, 1980, defendant physicians performed a surgical procedure to remove the remnant fragment of the CVP line. The CVP line had been manufactured by defendant Deseret, who sold the item to defendant Rush.

In count I of his complaint, as ultimately amended, plaintiff alleged that defendant Deseret had manufactured and sold a defective CVP line and that the CVP line had been unreasonably dangerous for its intended use. Count IV of plaintiff's amended complaint alleged that defendant Deseret had been negligent in its design, manufacture, and failure to warn of the dangers of the CVP line. Plaintiff alleged his reliance on the doctrine of *res ipsa loquitur* to prove both of these claims against defendant Deseret.

In count II of his amended complaint, plaintiff alleged that defendant physicians had negligently performed acts unknown to the plaintiff in the placement and removal of the CVP line while plaintiff was under defendant physicians' care and treatment. Plaintiff alleged reliance on the doctrine of *res ipsa loquitur*. Count III of plaintiff's amended complaint made similar allegations with respect to the care and treatment he received from agents or employees of defendant Rush.

Defendant Deseret and defendant physicians filed motions for summary judgment and supported these motions with deposition testimony given by two of the defendant physicians, Drs. Javid and Goldin. Dr. Javid performed the coronary bypass surgery on October 30, 1980, and placed the CVP line in plaintiff during the course of this surgery. Dr. Goldin performed the follow-up surgery on November 4 to remove the fractured CVP line. The remaining physicians who are named as defendants are members of the professional corporation of which Drs. Javid and Goldin are shareholders.

Dr. Javid testified in his deposition that the CVP line is a 12-inch-long, hollow plastic tube whose function is to monitor venous pressure of the heart after surgery and to facilitate post-operative intravenous administration of fluids and medications. Dr. Javid stated that toward the end of the plaintiff's bypass surgery, the tip of the CVP line was inserted through a puncture hole in the neck, threaded through fatty tissue around the sternum, and placed in the left innominate vein of the heart. A few inches of the CVP line remained outside plaintiff's neck at the end of this procedure. After the CVP line was put in place, Dr. Javid closed the sternum and completed the surgery.

Dr. Javid stated that the CVP line had no "obvious defect" before it was inserted during plaintiff's bypass surgery, although he did not

inspect it closely at that time. He explained that because of plaintiff's excessive weight, there was considerable fatty tissue in the chest area, and that "chances are something must have been difficult at the time of closure that had caused such an occurrence [*i.e.*, fracture of the CVP line]." Dr. Javid also stated that it was "possible" that when he "closed the sternum, [he] closed it on the [CVP line]."

Dr. Javid also explained in his deposition that a few days after the coronary bypass surgery, directions were given that the CVP line be removed. He stated that this instruction could have been given by him, or by Dr. Goldin, who was director of the intensive care unit at defendant Rush and thus had the authority to give such instructions. Dr. Javid stated that the CVP line would have been removed by a nurse, resident, or intern, that removal is not usually performed under the direct supervision of a physician, that an instruction to remove the CVP line is generally not given in writing but is usually given verbally, and that plaintiff's records did not show who removed the CVP line or that a written instruction for removal had been given. Dr. Javid testified that a CVP line is removed by gently pulling on the portion extending from the patient's body.

Dr. Goldin's deposition testimony was substantially similar to that given by Dr. Javid with respect to the nature, function, placement, and removal of a CVP line. Dr. Goldin detailed the surgical procedure he followed to remove the fractured CVP line from plaintiff's body on November 4, 1980. He stated that the remnant of the CVP line, which was approximately seven inches in length, was found lying free in the pericardial cavity following a reopening of the sternal incision that had been made during the coronary bypass surgery. Dr. Goldin testified that there is no "typical cause" of CVP fracture, and that he "surmised" that the CVP line "arched over the top of the sternum and made it difficult to remove." Dr. Goldin also stated that because of plaintiff's excessive weight, the "pathway for removal of the cathether [*sic*] [was] somewhat difficult." He also testified that he had never seen statistics or studies showing a correlation between a patient's obesity and a greater difficulty in removal of the CVP line from the patient. Dr. Goldin stated that fracture of the CVP line could have been caused by use of excessive force to remove it.

Both physicians testified that they were not present when removal of the CVP line was attempted and that they did not know with certainty who had attempted its removal. Dr. Javid testified that he had received a telephone call from a nurse at defendant Rush who informed him that there had been a difficulty in removing the CVP line and that the CVP line had fractured during the attempted removal.

Although Drs. Javid and Goldin looked at the remnant of the CVP line after it was surgically removed, neither could provide a definite cause for its fracture based upon this visual inspection. Drs. Javid and Goldin stated that they had each performed well over 1,000 coronary bypass surgeries and knew of only one prior incident where a CVP line had fractured upon removal. Neither doctor could give an explanation for the cause of the CVP line fracture in this prior instance.

Documents supporting the motions for summary judgment established that the CVP line was discarded by agents of defendant Rush following Dr. Goldin's removal of the fractured CVP line during surgery on November 4, 1980. Additional documents in the record indicate that all of the CVP lines used at defendant Rush were manufactured and supplied by defendant Deseret.

In response to the summary judgment motions, plaintiff presented the affidavit of Dr. Kenneth Barron, a board-certified thoracic surgeon. Dr. Barron stated that he had reviewed the plaintiff's medical record regarding the coronary bypass surgery and post-operative care thereof. Dr. Barron averred that in his opinion, and to a reasonable degree of medical certainty, fracture of the CVP line was caused by "a defect in the CVP catheter *** negligence on the part of the physicians in placing the CVP catheter *** negligence on the part of hospital personnel in removing the CVP catheter." Dr. Barron stated in his affidavit that the "fracture of a CVP catheter does not occur in the absence of one or more of the above situations."

Following briefing and argument, the trial court initially denied the motion for summary judgment filed by defendant Deseret. Thereafter, the trial court determined that the defendant physicians' summary judgment motion should be treated as a motion to dismiss based on affirmative matter that denied or defeated the plaintiff's claims. (Ill. Rev. Stat. 1987, ch. 110, par. 2—619(a)(9).) On this basis, the trial court dismissed the count in plaintiff's complaint against the defendant physicians, reasoning that principles of res ipsa loquitur were inapplicable to plaintiff's claim against these defendants. On this same legal basis, the trial court thereafter denied plaintiff's motion to reconsider, allowed the motion to dismiss filed by defendant Deseret, and dismissed all the remaining counts of plaintiff's complaint. Plaintiff's timely appeal followed.

■■ ■ In order to sustain the trial court's dismissal of plaintiff's complaint under section 2—619(a)(9), it must appear that the affirmative matter presented in defendants' motions either (1) completely negated the plaintiff's cause of action, (2) refuted crucial allegations of law made in the plaintiff's complaint, or (3) refuted conclusions of ma-

terial fact unsupported by allegations of specific fact contained in or inferred from the complaint. (See *Brown v. Morrison* (1989), 187 Ill. App. 3d 37, 39, 542 N.E.2d 1308; see also *Hall v. DeFalco* (1988), 178 Ill. App. 3d 408, 412-13, 533 N.E.2d 448.) In considering the sufficiency of a section 2—619 motion to dismiss, the court must construe the documents presented in the light most favorable to the nonmoving party and deny the motion if the documents reveal a disputed issue of material fact. See, *e.g., Ralston v. Casanova* (1984), 129 Ill. App. 3d 1050, 473 N.E.2d 444.

 ██ The trial court dismissed plaintiff's complaint because it concluded that plaintiff could not benefit from the *res ipsa loquitur* doctrine in his claims against the defendants. *Res ipsa loquitur* is a rule of evidence that permits the trier of fact to infer a defendant's negligence based upon circumstantial evidence when direct evidence of the injury is primarily in the defendant's knowledge and control. (*Metz v. Central Illinois Electric & Gas Co.* (1965), 32 Ill. 2d 446, 449, 207 N.E.2d 305.) In order to benefit from the permissible inference of the *res ipsa loquitur* doctrine, the plaintiff must demonstrate that the instrumentality causing plaintiff's injuries was under the defendant's control at the time that the condition giving rise to the plaintiff's injuries was created. In addition, the plaintiff must show that his injuries normally would not have occurred if defendant had exercised proper care of the instrumentality. (*Imig v. Beck* (1986), 115 Ill. 2d 18, 26, 503 N.E.2d 324; see also *Dyback v. Weber* (1986), 114 Ill. 2d 232, 500 N.E.2d 8 (plaintiff need not plead and prove plaintiff's freedom from contributory negligence); (*Lynch v. Precision Machine Shop, Ltd.* (1982), 93 Ill. 2d 266, 274, 443 N.E.2d 569 (control is a "flexible standard" and "key question is whether the probable cause is one which defendant was under a duty to the plaintiff to anticipate or guard against").) Whether a plaintiff may invoke the principles of *res ipsa loquitur* is a question of law to be resolved by the court. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1113; *Drewick v. Interstate Terminals, Inc.* (1969), 42 Ill. 2d 345, 349, 247 N.E.2d 877.) Once the court has made this preliminary determination, it is the province of the fact finder to decide whether, based upon this inference of negligence and the countervailing evidence presented by the defendant, the plaintiff has proven defendant's negligence by a preponderance of the evidence. *Spidle v. Steward* (1980), 79 Ill. 2d 1, 402 N.E.2d 216; see also *Imig*, 115 Ill. 2d at 27-28, 30-31 (*res ipsa loquitur* does not shift burden of proof to defendant).

We consider first the trial court's dismissal of plaintiff's *res ipsa loquitur* negligence counts against defendant physicians (count II),

defendant Rush (count III), and defendant Deseret (count IV). All of the defendants contend that plaintiff could not invoke *res ipsa loquitur* because plaintiff failed to show that the defendants had joint, concurrent control over the instrumentality causing plaintiff's injuries. To support this argument, defendants rely upon *Kolakowski v. Voris* (1980), 83 Ill. 2d 388, 415 N.E.2d 397, and *Loizzo v. St. Francis Hospital* (1984), 121 Ill. App. 3d 172, 459 N.E.2d 314.

In *Kolakowski*, plaintiff filed a medical malpractice suit against several physicians and a hospital, seeking damages for injuries allegedly sustained by plaintiff during a surgical procedure in which the plaintiff had received a general anesthetic. Relying upon *Ybarra v. Spanguard* (1944), 25 Cal. 2d 486, 154 P.2d 687, the Illinois Supreme Court held that the control requirement of *res ipsa loquitur* was satisfied because plaintiff demonstrated that "the physicians and hospital, at the time of surgery, each owed an independent duty to the patient and exercised concurrent control over the operation and equipment." *Kolakowski*, 83 Ill. 2d at 396; see also *Lynch*, 93 Ill. 2d at 274 (*Kolakowski* was "a multiple-defendant, shared-control case").

In *Loizzo*, the plaintiff sought damages for injuries relating to a CVP line that allegedly had been negligently left in his body. The appellate court held that the trial court properly entered summary judgment in favor of the defendants, since plaintiff failed to present any evidence to contradict the defendants' assertions that they had no control of the CVP line and no knowledge concerning its placement in plaintiff's body. (*Loizzo*, 121 Ill. App. 3d at 179.) The court also noted that in "cases of medical malpractice against multiple defendants the doctrine [of *res ipsa loquitur*] has been held applicable where the defendants were in joint control of the agency causing the injury" (121 Ill. App. 3d at 179), and that the defendant physicians "were not acting jointly with each other. The situation here involves different treatment by different entities at different times in different locations." 121 Ill. App. 3d at 180.

Defendants argue that, in view of the Illinois Supreme Court's decision in *Kolakowski* and the appellate court's decision in *Loizzo*, application of *res ipsa loquitur* should be limited to instances where the defendants exercised joint, concurrent control during a surgical procedure in which the plaintiff sustained injuries, the cause of which plaintiff has no direct knowledge because general anesthesia was administered during the surgery.

We cannot agree with this argument, since it does not comport with the Illinois Supreme Court's decision in *Gatlin v. Ruder* (1990), 137 Ill. 2d 284, 560 N.E.2d 586. In *Gatlin*, the plaintiff filed a *res*

*ipsa loquitur* medical malpractice suit for damages relating to a skull fracture and related injuries allegedly sustained by plaintiff during and/or immediately after his birth. Suit was filed against both the physician who attended the delivery and the hospital who cared for plaintiff immediately after his birth. However, plaintiff could not conclusively establish which of the defendants had caused the plaintiff's injuries. The appellate court affirmed the entry of summary judgment in favor of the defendant physician under these circumstances, reasoning that "[i]n a medical malpractice case, the plaintiff must prove that it is more probably true than not true that the defendant [physician]'s negligence was a proximate cause of the plaintiff's injury. [Citation.]" *Gatlin v. Ruder* (1989), 178 Ill. App. 3d 1059, 1060-61.

■ The supreme court rejected this reasoning on the ground that it "incorrectly sets forth a party's burden on a summary judgment motion" (*Gatlin*, 137 Ill. 2d at 292-93), and impermissibly weighed the sufficiency of plaintiff's evidence as a matter of law on a motion for summary judgment. (137 Ill. 2d at 294.) In concluding that the plaintiff's evidence was sufficient to invoke the principles of *res ipsa loquitur*, the supreme court reasoned that plaintiff was not required to " 'establish that it is more probable that [the defendant physician] caused his injuries, and not the hospital personnel' " (137 Ill. 2d at 297), and stated that "the trier of fact should decide who maintained control," the defendant physician or the defendant hospital. (137 Ill. 2d at 298.) The supreme court also determined that the plaintiff did not have to eliminate all other possible causes of his injuries before he could invoke *res ipsa loquitur* (137 Ill. 2d at 298), reasoning that the "jury must determine who proximately caused [plaintiff's] injuries." (137 Ill. 2d at 298.) Relying upon *Kolakowski v. Voris* (1980), 83 Ill. 2d 388, the *Gatlin* court held:

"[I]n the case at bar, although [plaintiff] presented evidence which indicated [the defendant hospital] may have caused his injuries, such evidence did not conclusively establish the cause of those injuries. The evidence [plaintiff] presented against [the defendant physician] also did not conclusively establish the cause of [plaintiff's] injuries. The testimony and statements of [the medical witnesses] were merely the differing opinions of experts. The trier of fact has to decide what facts and opinions to believe. Therefore, [plaintiff's] *res ipsa loquitor* theory does not necessarily fail." *Gatlin*, 137 Ill. 2d at 299.

■ As *Gatlin* demonstrates, a plaintiff may benefit from *res ipsa loquitur* principles if the plaintiff can present evidence tending to show that the defendants exercised *consecutive* management or con-

trol over the instrumentality that caused plaintiff's injuries. Consequently, we cannot accept defendants' argument that plaintiff must show that all of the defendants herein exercised joint and concurrent control over the instrumentality that caused plaintiff's injuries.

■ Applying the precedent of *Gatlin* to the case at bar, we conclude that the negligence counts of plaintiff's complaint directed against defendant physicians (count II), defendant Rush (count III), and defendant Deseret (count IV) satisfied the requirements for application of the *res ipsa loquitur* doctrine.

First, the record indicates that plaintiff presented evidence that tended to show that his injuries would not normally occur in the absence of negligence. Construing the documents of record liberally in favor of plaintiff, the nonmoving party with respect to the motion to dismiss, the affidavit of plaintiff's medical expert creates a triable issue of fact with respect to whether a CVP line fracture normally does not occur in the absence of negligence on the part of the defendants. In this affidavit, plaintiff's expert stated that it was his opinion, to a reasonable degree of medical certainty, that the fracture of plaintiff's CVP line was caused by "a defect in the CVP catheter *** negligence on the part of the physicians in placing the CVP catheter *** negligence on the part of hospital personnel in removing the CVP catheter." The affidavit was properly considered in support of plaintiff's position, because the opinion of plaintiff's medical expert was based upon evidentiary facts regarding plaintiff's medical care as detailed in the pertinent medical records. (See, *e.g.*, *Protective Insurance Co. v. Coleman* (1986), 144 Ill. App. 3d 682, 688, 494 N.E.2d 1241.) The defendants do not dispute that each had a legal duty to exercise due care in order to guard against the possibility that the CVP line might fracture and thereby cause injury to the plaintiff.

In addition, the record shows that the defendants exercised consecutive control over the CVP line. Documents in the record demonstrated that the CVP line was manufactured and supplied by defendant Deseret to defendant Rush, that the CVP line was used by defendant physicians in their performance of the coronary bypass surgery, and that the CVP line was removed by agents or employees of defendant Rush pursuant to the instructions of the defendant physicians with regard to plaintiff's in-patient post-operative care.

The defendants argue that plaintiff cannot benefit from *res ipsa loquitur* because the record discloses that plaintiff's injuries may have been proximately caused by the negligence of one of the other defendants, or by the defective condition in the CVP line. The defendants also assert that plaintiff has not shown that his injury was *probably*

caused by the negligence of one of them. Relying upon the deposition testimony of Drs. Javid and Goldin, defendants assert that plaintiff's injuries were not caused by negligence on the part of any of the defendants.

However, as the Illinois Supreme Court observed in *Gatlin*, in order to overcome the defendants' motions to dismiss with respect to the applicability of *res ipsa loquitur* to the case at bar, plaintiff need not present conclusive proof of which of the defendants exercised control over the CVP line at the time that the condition causing plaintiff's injuries was created. Plaintiff is also not required to show that his injuries were more probably caused by one defendant than by another defendant. Nor must plaintiff eliminate all causes of his injuries other than the negligence of one or more of the defendants. (*Gatlin*, 137 Ill. 2d at 297-98.) It is for the trier of fact to determine which defendant had control of the CVP line at the time that the injury-causing condition in the CVP line was created, and for the trier of fact to decide whether plaintiff's injuries were proximately caused by the negligence of any of the defendants. *Gatlin*, 137 Ill. 2d at 299; see also *American States Insurance Co. v. Whitsitt* (1990), 193 Ill. App. 3d 270, 549 N.E.2d 988.

The cases cited by the defendants do not conflict with the conclusion we reach herein. *Barkei v. Delnor Hospital* (1988), 176 Ill. App. 3d 681, 683, 531 N.E.2d 413, pertained to the sufficiency of the plaintiff's *res ipsa loquitur* evidence following a jury trial. *Politakis v. Inland Steel Co.* (1983), 118 Ill. App. 3d 249, 454 N.E.2d 811, held *res ipsa loquitur* inapplicable because the evidence showed that the plaintiff retained control of the injury-causing instrumentality. *Piquette v. Midtown Anesthesia Associates* (1989), 192 Ill. App. 3d 219, 548 N.E.2d 659, held *res ipsa loquitur* inapplicable, since the plaintiff there produced no expert testimony regarding the negligent cause of his injury and the question of whether plaintiff's injury normally would have occurred in the absence of negligence was not in the common knowledge of laypersons.

In light of these considerations, we conclude that the trial court erred in dismissing plaintiff's *res ipsa loquitur* negligence claims against defendant physicians (count II), defendant Rush (count III), and defendant Deseret (count IV).

■ We also conclude that the trial court erred in dismissing plaintiff's strict product liability claim against defendant Deseret (count I). Plaintiff alleged in this count, as ultimately amended, that he intended to rely upon principles of *res ipsa loquitur* in proof of his claim. On appeal, plaintiff contends that *res ipsa loquitur* should ap-

ply to a strict product liability suit. To support this contention, plaintiff relies upon *Putensen v. Clay Adams, Inc.* (1970), 12 Cal. App. 3d 1062, 91 Cal. Rptr. 319. However, the court in *Putensen* did not apply *res ipsa loquitur* principles to a strict product liability claim. Consequently, the decision does not support plaintiff's position. Accordingly, we decline to hold that *res ipsa loquitur* principles are *per se* applicable to plaintiff's strict product liability claim.

Plaintiff also relies upon several Illinois decisions for the proposition that Illinois law recognizes a principle, similar to *res ipsa loquitur*, as applicable to strict product liability. Under these Illinois cases, a plaintiff may prove a case of strict product liability through circumstantial evidence that affords a reasonable inference that the product was defective at the time it left the manufacturer's control and that this defective condition was a proximate cause of the plaintiff's injuries. (See, *e.g.*, *Ralston v. Casanova* (1984), 129 Ill. App. 3d 1050, 473 N.E.2d 444; *Neighbors ex rel. American States Insurance Co. v. City of Sullivan* (1975), 31 Ill. App. 3d 657, 334 N.E.2d 409.) Because the parties have addressed the question on its merits in this appeal, we consider whether plaintiff's strict product liability claim is sufficient in light of this precedent.

■■ ■ A claim for strict product liability is comprised of three elements: (1) the product was defective, in that it was unreasonably dangerous in light of its nature and intended use; (2) the product's defective condition was present when it left the manufacturer's control; and (3) the defective condition of the product proximately caused plaintiff's injuries. (See, *e.g.*, *Coney v. J.L.G. Industries, Inc.* (1983), 97 Ill. 2d 104, 111, 454 N.E.2d 197; *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 623, 210 N.E.2d 182.) The claim may be proven by circumstantial evidence (*Bejda v. SGL Industries, Inc.* (1980), 82 Ill. 2d 322, 412 N.E.2d 464; *Tweedy v. Wright Ford Sales, Inc.* (1976), 64 Ill. 2d 570, 357 N.E.2d 449; see also *Gillespie v. R.D. Werner Co.* (1978), 71 Ill. 2d 318, 375 N.E.2d 1294), and the absence of the product at trial is not fatal to the plaintiff's cause. (See, *e.g.*, *Neighbors ex rel. American States Insurance Co. v. City of Sullivan* (1975), 31 Ill. App. 3d 657, 334 N.E.2d 409; see also *Mateika v. La Salle Thermogas Co.* (1981), 94 Ill. App. 3d 506, 418 N.E.2d 503.) On this basis, Illinois recognizes, as noted above, that a plaintiff may establish a case of strict product liability, even though the plaintiff cannot prove the precise cause of his injury, where the plaintiff presents sufficient circumstantial evidence to afford a reasonable inference that the product was defective at the time it left the defendant's control and that this defective condition proximately caused the plaintiff's injury. (See

*Stewart v. B.F. Goodrich Co.* (1987), 153 Ill. App. 3d 1078, 506 N.E.2d 783; *Neighbors ex rel. American States Insurance Co. v. City of Sullivan* (1975), 31 Ill. App. 3d 657, 334 N.E.2d 409; *St. Paul Fire & Marine Insurance Co. v. Michelin Tire Corp.* (1973), 12 Ill. App. 3d 165, 298 N.E.2d 289; *Bollmeier v. Ford Motor Co.* (1970), 130 Ill. App. 2d 844, 265 N.E.2d 212; see also *Bejda v. SGL Industries, Inc.* (1980), 82 Ill. 2d 322, 412 N.E.2d 464; *Tweedy v. Wright Ford Sales, Inc.* (1976), 64 Ill. 2d 570, 357 N.E.2d 449; *Ralston v. Casanova* (1984), 129 Ill. App. 3d 1050, 473 N.E.2d 444; *Mateika v. La Salle Thermogas Co.* (1981), 94 Ill. App. 3d 506, 418 N.E.2d 503; see generally Annot., Strict Products Liability: *Product Malfunction or Occurrence of Accident as Evidence of Defect*, 65 A.L.R.4th 346 (1988).) One court has expressly noted the similarity between this rule and the doctrine of *res ipsa loquitur*, observing that "[i]n some cases the requisite quantum of proof may correspond to that usually required to invoke the doctrine of *res ipsa loquitur*, although purists would correctly note that *res ipsa loquitur* is incompatible with a strict liability theory," and concluding that the "underlying principle that circumstantial evidence may create inferences of fact which are not otherwise subject to direct proof is entirely consonant with a strict liability theory." *St. Paul Fire*, 12 Ill. App. 3d at 177-78.

■■ Based upon this precedent, we conclude that plaintiff's proof was sufficient to proceed on the merits of plaintiff's strict product liability claim. The affidavit of plaintiff's expert, when construed liberally in plaintiff's favor, raises an inference that the CVP line was defective and proximately caused plaintiff's injuries. It is for the trier of fact to determine whether the CVP line was defective at the time it left the control of defendant Deseret. It is also for the trier of fact to determine whether it was the defective condition of the CVP line, or the negligence of one of the other defendants, that was a proximate cause of plaintiff's injuries. (See, *e.g., Stewart v. B.F. Goodrich Co.* (1987), 153 Ill. App. 3d 1078, 506 N.E.2d 783; *Renfro v. Allied Industrial Equipment Corp.* (1987), 155 Ill. App. 3d 140, 507 N.E.2d 1213; *Varady v. Guardian Co.* (1987), 153 Ill. App. 3d 1062, 506 N.E.2d 708.) As a court of review, we cannot weigh the sufficiency of plaintiff's proof on defendant Deseret's motion to dismiss. See *Gatlin*, 137 Ill. 2d at 292-94; see also *Pyne v. Witmer* (1989), 129 Ill. 2d 351, 368-69, 543 N.E.2d 1304.

The cases cited by defendant Deseret are factually distinguishable from the instant cause. In several of these decisions, the plaintiff produced no expert opinion that the defendant's product was probably defective, and the mere occurrence of plaintiff's accident did not, un-

der the facts of those cases, warrant a reasonable inference that the product was defective. (See *Ralston v. Casanova* (1984), 129 Ill. App. 3d 1050, 473 N.E.2d 444; *Mateika v. La Salle Thermogas Co.* (1981), 94 Ill. App. 3d 506, 418 N.E.2d 503; *Rockett v. Chevrolet Motor Division* (1975), 31 Ill. App. 3d 217, 334 N.E.2d 764; *Shramek v. General Motors Corp.* (1966), 69 Ill. App. 2d 72, 216 N.E.2d 244.) In other decisions, the plaintiff's expert could not state that the defendant's product was probably defective or the expert's opinion was severely impeached by other evidence that negated the expert's testimony regarding the defective condition of the product. (See *D'Olier v. General Motors Corp.* (1986), 145 Ill. App. 3d 543, 492 N.E.2d 1040; *Miller v. General Telephone Co.* (1975), 29 Ill. App. 3d 848, 330 N.E.2d 573; *Vuletich v. Alivotvodic* (1979), 73 Ill. App. 3d 927, 392 N.E.2d 663; *Huff v. Elmhurst-Chicago Stone Co.* (1981), 94 Ill. App. 3d 1091, 419 N.E.2d 561; see also *Abel v. General Motors Corp.* (1987), 155 Ill. App. 3d 208, 507 N.E.2d 1369.) In the remaining case, the undisputed facts showed that the product had probably been altered after it left the manufacturer's control. (*Phillips v. United States Waco Corp.* (1987), 163 Ill. App. 3d 410, 516 N.E.2d 670; see also *Loy v. Firestone Tire & Rubber Co.* (1988), 168 Ill. App. 3d 503, 522 N.E.2d 848 (defendant produced undisputed evidence that product was not defective when it left defendant's control).) None of these factual scenarios is present in the instant cause.

In contrast to the cases cited by defendant, Illinois decisions have consistently held a plaintiff's proof sufficient to present a triable factual issue when the plaintiff has produced expert testimony that the defendant's product was defective when it left the defendant's control and was a proximate cause of the plaintiff's injury. (See *Stewart v. B.F. Goodrich Co.* (1987), 153 Ill. App. 3d 1078, 506 N.E.2d 783; *Neighbors ex rel. American States Insurance Co. v. City of Sullivan* (1975), 31 Ill. App. 3d 657, 334 N.E.2d 409; *St. Paul Fire & Marine Insurance Co. v. Michelin Tire Corp.* (1973), 12 Ill. App. 3d 165, 298 N.E.2d 289; *Bollmeier v. Ford Motor Co.* (1970), 130 Ill. App. 2d 844, 265 N.E.2d 212.) Consistent with this precedent, we conclude that the trial court erred in dismissing plaintiff's strict product liability claim against defendant Deseret.

■■■ Defendant Deseret also argues on appeal that the affidavit of plaintiff's expert, Dr. Barron, is insufficient to create a genuine issue of fact, because there is nothing in the record to reveal whether Dr. Barron is qualified to render an opinion with respect to a defective condition in a CVP line. We do not address this contention, as defendant Deseret did not raise this argument in the trial court. The

qualifications of an expert cannot be tested on appeal when those qualifications were unchallenged before the trial court. See *Abel v. General Motors Corp.* (1987), 155 Ill. App. 3d 208, 221, 507 N.E.2d 1369.

For the reasons stated, we reverse the trial court's dismissal of plaintiff's complaint and remand the matter for further proceedings consistent herewith.

Reversed and remanded.

JIGANTI and JOHNSON, JJ., concur.