CHARLES DAVIS, Plaintiff-Appellant, v. MATERIAL HANDLING
ASSOCIATES, INC., Defendant-Appellee.

Third District   No. 3—09—0214

Opinion filed May 24, 2010.

Michael Carter (argued), of Horwitz, Horwitz & Associates, Ltd., of
Chicago, for appellant.

John Bullaro and Scott Sinson, both of Bullaro & Carton, P.C., of Chicago,
and Daniel J. Carpenter, of Armstrong Teasdale, LLP, and K. Lee Marshall
(argued), of Bryan Cave LLP, both of St. Louis, Missouri, for appellee.

JUSTICE McDADE delivered the opinion of the court:
Plaintiff, Charles Davis, appeals the trial court's summary judg-

ment ruling in favor of defendant, Material Handling Associates, Inc., and its denial of leave to file a fourth amended complaint. We reverse and remand for further proceedings.

## FACTS

On February 13, 2003, plaintiff was working at the Cat Logistics Services, Inc. (Cat Logistics), facility in Joliet, Illinois. Plaintiff was using a Caterpillar brand "order picker," which is an electric product that allows workers to be elevated on a platform in a warehouse to fill orders or "pick" certain product from high warehouse racking. The order picker at issue was designed by defendant, maintained by Calumet Lift Services, and had been in use at the Cat Logistics facility for about three years.

On the day of the incident, plaintiff had been using the order picker for more than three hours. He raised the hydraulics and lowered them "several times" that day. He testified that he had no problems with the machine's operation. The hydraulics were working fine and he claims that he did not run into any object with the order picker. Just before the accident, plaintiff was elevated on the order picker near the last shelf on a rack.

Plaintiff claims that while he was elevated on the order picker he was sprayed in the face and chest with hydraulic fluid from the hydraulic hose on the order picker. He testified that he "jumped back" and grabbed the shelf with his left arm to "weave" from the fluid. He then estimated that "maybe eight, twelve seconds" after the fluid started spraying, the lift on the order picker began to descend. Plaintiff slipped and fell to the floor, sustaining several injuries.

There were no witnesses to the accident. Others, however, saw the accident scene, including the order picker and the hydraulic hose, shortly thereafter. William McMorris, a coworker, testified that some boxes were "askew" and "extending in to the warehouse aisle" like they had been "disturbed." When he saw the order picker, he noticed that it was "damaged *** like it had been hit." When he saw the hydraulic hose, he testified that it was "severed" or "pulled apart" and that it looked like there "was a stretching, a slight stretching from the pressure being released." McMorris admitted he was "not an expert on hoses."

Krista Mayo of Calumet Lift Services viewed the hose. Like McMorris, Mayo admitted that she was "not a materials expert." She testified that the hose "was torn" and "just kind of like pulled apart." She also observed that "there was a lot of stretching on the hose, what looked almost like little slits along the hose, almost if it were dry rotted." The end of the hose was rough "as if the hose had just

snapped apart." Based on her observations, Mayo believed the order picker "took a blow, which caused the hydraulic line to break."

After the accident, Larry Stanford, a mechanic for Calumet Lift Services, repaired the order picker. He wrote in his report that the hydraulic hoses were "ripped and smashed." Stanford had "never seen a line like that ripped in half in 32 years working on a lift truck." Stanford testified that the rest of the hose was "in good shape except for the rupture." Stanford believed that the order picker "had to crash into something, because the brackets that held the line [were] all mangled." Stanford maintained possession of the hose, which was ripped in two pieces, and took them to the area reserved for Calumet Lift Services at Cat Logistics. He kept the hose to "prove *** [that] this particular incident was customer damage." For two weeks to a month, the hose "just laid there in the shop area." Eventually, however, the hose "disappeared" and Stanford does not know what happened to it.

On December 1, 2004, plaintiff filed this action in Cook County against, defendant, Calumet Lift Services, Cat Logistics Inc., Caterpillar Inc., and Cat Lift Trucks. The case was then transferred to Will County under the doctrine of *forum non conveniens*. During the course of the litigation, plaintiff amended his complaint several times. The operative version—the third amended complaint—alleges the following claims: (1) strict products liability against defendant, Caterpillar, and Cat Lift Trucks; (2) negligence products liability against defendant, Caterpillar, and Cat Lift Trucks; (3) negligent maintenance against Caterpillar, Cat Logistics, and Calumet Lift Services; (4) negligent spoliation against Cat Logistics; (5) negligent spoliation against Calumet Lift Services; and (6) negligent spoliation against defendant.

Plaintiff's claims against defendant focused on the hydraulic hose, connectors, and couplings. In particular, plaintiff alleged that the hose "had a propensity to crack, rot, break, or otherwise fail" and that the hose connectors or couplings "had a propensity to slip, disconnect, or otherwise fail." In contrast, plaintiff's claims against Calumet Lift Services alleged a failure to maintain the order picker "in a condition that was reasonably safe." Plaintiff's claims of negligent spoliation alleged that defendants, Cat Logistics and Calumet Lift Services, failed to keep the hose and damaged bracket "in an unaltered condition."

On August 9, 2007, defendant filed a motion for summary judgment on the grounds that: plaintiff did not have sufficient evidence of causation in light of the missing hose and failed to eliminate secondary causes, such as negligent maintenance and misuse of the order picker. In response to defendant's motion, plaintiff submitted the af-

fidavit of engineer Roger Tate.[1] Tate opined that the order picker was "defective in design" and "caused [p]laintiff to become injured." His affidavit states:

"3. Before rendering my opinions, I not only inspected the subject order picker, but I reviewed a number of documents, including, but not limited to the service history of the subject order picker, service and parts manuals, operation & maintenance manual, written accident reports generated near the time of the incident, and the depositions of [plaintiff], Krista Mayo, William McMorris, Margaret Persico, and Larry Stanford.

4. My opinions are fully supported by the facts, documents, and testimony in evidence in this case.

\* \* \*

7. In the instant case, while [p]laintiff was operating the order picker for the purpose of which it was intended, the hose jumped the pulley and became wedged between the pulley and the pulley support bracket.

8. The wedging action created a hole in the hose producing a fluid spray causing the platform to fall, which in turn shifted so much weight onto the hose that it snapped in two.

\* \* \*

21. The subject order picker was \*\*\* defective in design in that there were no provisions for automatically maintaining the tension or alignment of the mast hoses. Furthermore, the order picker was defective in design as the pulley brackets had no features to keep the hose seated in the pulley. Additionally, the bolt for the pulley for the subject hose became loose, making it easier for the hose to wedge between the pulley and the pulley bracket. Also, the maintenance manuals for the order picker which were created by [defendant] were inadequate to prevent slack, misalignment, and bolt loosening with regards to the subject hose, its attachment, and its pulley system. Lastly, it is apparent that at the time the subject order picker was manufactured by the [d]efendant, the design features that were needed to maintain tension and alignment of the hose as well as features to keep the hose seated in the pulley were technically and economically feasible as is demonstrated by the fact that these design features were provided for the mast cables on the same product.

\* \* \*

27. Witness testimony also shows that tension was mechanism of failure [sic] of the hose in this case. Ms. Mayo, Mr. McMorris, and

---

[1]Both parties refer to Tate's affidavit as an "expert affidavit."

Mr. Stanford all described the end of the break as having a ragged appearance and two of the three said the hose looked like it had been stretched. These descriptions make it clear that the hose was not separated by being severed (cut), sheared (like scissors), or chiseled (pinched between a sharp edge and a hard surface) because the wired ends would have been even and not ragged. This leaves tension (pulling) as the only possible mechanism of failure.

28. Under normal conditions, the hose in question would have little tension on it. There was no tensioning device provided for the hose, (which as shown above was a design defect), thus as long as the pulley turned freely, there would never be a significant pull on the hose. However, if the hose or pulley became bound up, movement of the mast up or down would cause the hose to come under a large tension load. Bending the hose bracket at the lower end of the hose would not impede the motion of the hose at the pulley or impose enough tension load on the hose to make it break. Thus, ruling out defendant's theory that negligent operation of the order picker by colliding the hose bracket into racks caused the accident.

29. Therefore, the only remaining explanation for the break in the subject hose is that it got jammed at the pulley and subsequent motion of the operator platform/mast pulled the hose in two, as shown in great detail above. I conclude that the subject hose jumped the pulley and became wedged between the pulley and the pulley support bracket.

30. *** As shown in detail above, it is clear that the tension and misalignment problems with regard to the subject hose on the order picker were a direct result of design defects created by defendant. These tension and misalignment problems which led to hose failure and the subsequent operator platform fall were completely foreseeable, and alternative designs to prevent said problems were available easily implementable. Thus there is sufficient evidence from which a jury could conclude that the design was in a defective condition when it left [defendant's] possession and that the defect coupled with [defendant's] inadequate maintenance manuals and warnings caused the hose to fail and subsequently caused [p]laintiff to become injured."

On February 27, 2008, the trial court granted defendant's motion for summary judgment. Specifically, it stated:

"The case law is clear for the [p]laintiff to prevail under these circumstances, he must eliminate misuse and all other causes before a cause of action can continue on a theory of defective design. The Court has reviewed the voluminous submissions of counsel and feels that the [p]laintiff has not eliminated other causes for this accident such as operator error, misuse or improper maintenance. Specifically, the evidence appears to establish that mainte-

nance of the hoses was intended to occur every 200 hours of use. On this unit, that maintenance had not occurred for 350 hours. The evidence indicated that the hose was dry-rotted and therefore a reasonable trier of fact could conclude that improper maintenance was a significant cause to the injuries allegedly occurring to the [p]laintiff. As a consequence, the motion for summary judgment is granted."

On June 3, 2008, the trial court also granted summary judgment in favor of defendant on the negligent spoliation claim (count VI). Plaintiff then moved for leave to file a fourth amended complaint. The proposed fourth amended complaint sought to add other alternative theories of causation. The trial court denied plaintiff's request for leave and this appeal followed.[2]

## ANALYSIS

Plaintiff first contends that the trial court's decision granting defendant summary judgment misapprehends the applicable law in a product liability action. Here, the trial court's decision was based upon the understanding that plaintiff was required to "eliminate *** all other causes [for the accident] before a cause of action can continue on a theory of defective design." Plaintiff, however, asserts that he does not need to establish the precise cause of his injuries. Instead, plaintiff calls our attention to the fact that a *prima facie* case of product liability can be established exclusively from circumstantial evidence and that, under such circumstances, the evidence must either "tend to negate other reasonable causes or there must be an expert opinion that the product was defective." Plaintiff contends that Tate's opinion, that the order picker was "defective in design" and "caused [p]laintiff to become injured," was sufficient to create a genuine issue of material fact. Thus, plaintiff concludes that the trial court erred in granting defendant summary judgment on the basis that plaintiff failed to exclude other causes. Our review of a grant of summary judgment is *de novo. Arangold Corp. v. Zehnder*, 204 Ill. 2d 142, 146, 787 N.E.2d 786, 789 (2003).

At the outset, we note that several Illinois cases have held that a genuine issue of material fact may be found to exist in a case of product liability even if the plaintiff fails to disprove all other possible causes of his injury. See *Stewart v. B.F. Goodrich Co.*, 153 Ill. App. 3d 1078,

---

[2]Plaintiff appeals only from the portion of the trial court's judgment granting defendant's motion for summary judgment as to his product liability claims and denying his request for leave to file a fourth amended complaint. Plaintiff does not contend that the trial court erred in awarding defendant summary judgment on his negligent spoliation claims.

506 N.E.2d 783 (1987); *Varady v. Guardian Co.*, 153 Ill. App. 3d 1062, 506 N.E.2d 708 (1987); *Tulgetske v. R.D. Werner Co.*, 86 Ill. App. 3d 1033, 408 N.E.2d 492 (1980). We review each of these cases individually.

The plaintiff in *Stewart* bought a car that was equipped with four tires manufactured by the manufacturer. The plaintiff sued the manufacturer after one of the tires exploded while he was driving the car. At trial, the plaintiff presented an affidavit from a tire expert, which she contended was sufficient to have raised a material question of fact as to whether an original defect in the tire in question was a proximate cause of her injury. The manufacturer filed a motion for summary judgment, arguing that the plaintiff was unable to establish that the tire in question did not fail as a result of deflation or underinflation. The trial court granted the manufacturer's motion. On appeal, the court reversed the trial court's award of summary judgment on the grounds that it was not necessary for the plaintiff to "establish the precise cause of his injury" at this stage. *Stewart*, 153 Ill. App. 3d at 1081, 506 N.E.2d at 785. Instead, the court found that the expert's affidavit created a genuine issue of material fact that must be left for the trier of fact to decide. *Stewart*, 153 Ill. App. 3d at 1081, 506 N.E.2d at 785. Specifically, the court stated:

"Summary judgment should be rendered without delay if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. [Citation.] In a products liability case the plaintiff must prove his injury or damage resulted from a condition of the product, that the condition was an unreasonably dangerous one, and that the condition existed at the time it left the manufacturer's control. [Citation.] These elements may be proved by circumstantial evidence. [Citation.] For circumstantial evidence to make out a *prima facie* case, it must tend to negate other reasonable causes or there must be an expert opinion that the product was defective. [Citation.] Because liability in a products liability action cannot be based on mere speculation, guess, or conjecture, the circumstances shown must justify an inference of probability as distinguished from mere possibility. However, at the summary judgment stage, the plaintiff is not normally required to prove his case, but must present some facts to support the elements of his claim. [Citation.] Though [the plaintiff's expert] could not specify the precise defect present in the tire in question, this was not fatal to plaintiff's case. The requirement that the plaintiff establish the precise cause of his injury may, at times, be excused in an action grounded on strict liability in tort provided the plaintiff establishes some credible basis

for the reasonable inference that a condition of the product proximately caused the injury. [Citation.] [The expert] testified that in his opinion, apparently based, *inter alia*, on [the] plaintiff's deposition, the tire in question did not fail as a result of user underinflation but rather was defective in some way at the time it left defendant's control. This was a sufficient showing to avoid summary judgment, and judgment should not have been entered on this record." *Stewart*, 153 Ill. App. 3d at 1081, 506 N.E.2d at 785.

The plaintiff in *Varady* brought an action against the manufacturer for injuries allegedly resulting from the collapse of an aluminum crutch. Unlike the present case, however, there was no expert testimony in *Varady*. Regardless, the court on appeal reversed the trial court's granting of a motion for judgment notwithstanding the verdict for plaintiff. *Varady*, 153 Ill. App. 3d at 1066-67, 506 N.E.2d at 712. Specifically, the court stated:

"[I]t was not necessary for [the] plaintiff to present expert testimony that the product contained a specific defect. [Citation.] It was also not necessary for plaintiff to disprove all other possible causes of her fall and injury. [Citation.] While strict liability cannot be based on mere speculation, guess, or conjecture, circumstantial evidence is sufficient to make out a *prima facie* case if it tends to negate other reasonable causes and justifies an inference of probability as distinguished from mere possibility. [Citation.]

In the case at bar, plaintiff testified that as she turned to her left with her crutches under her armpits, the left crutch collapsed, causing her to lose her balance and fall. Defendant suggests that plaintiff lost her balance because of a dizzy spell or because the tip of her crutch went into a hole and that the crutch bent only from a lateral force, *i.e.*, because plaintiff's amputated leg hit it. However, plaintiff testified that she did not suffer from dizzy spells at the time of the incident and that her amputated leg could not have caused the crutch to bend. Plaintiff's evidence was bolstered by defendant's expert's testimony that if the crutch collapsed under a downward load while being used as intended, there would be a defect in the crutch. [Citations.]

From the evidence presented in the case at bar, the jury could reasonably have concluded that the crutch was being used in a normal manner, that it failed to perform in the manner reasonably expected, resulting in plaintiff's fall and injury, and that there were no reasonable secondary causes for the fall. *** [T]here was sufficient evidence in the case at bar for the jury to find that the plaintiff was not the cause of her injuries. [Citations.]" *Varady*, 153 Ill. App. 3d at 1066-67, 506 N.E.2d at 712.

The plaintiff in *Tulgetske* brought an action against the manufacturer for injuries allegedly resulting from the collapse of a ladder. The jury ultimately found the manufacturer liable. On appeal, the manufacturer contended that the trial court should have directed a verdict in its favor because of the plaintiff's failure to prove that any defect in the ladder was the proximate cause of his injuries and that the jury's verdict was against the manifest weight of the evidence. In affirming the trial court's judgment the court stated:

> "Much argument of a rather technical nature is indulged in in the briefs, but we do not think that this court is the correct forum for such factual and scientific disputes to be resolved. The jury heard the expert testimony presented by both sides and was asked to decide whether it was true, as plaintiff claimed, that the defective condition of the rails caused the left side rail to fail while he was on the ladder, thus causing his fall and injury, or whether—as defendants claimed—plaintiff's version of how the accident occurred was 'inherently improbable.' Clearly, the questions of fact were properly submitted to the jury [citation], and the jury resolved them in favor of the plaintiff. There is no requirement that plaintiff must disprove all other possible causes." *Tulgetske*, 86 Ill. App. 3d at 1038, 408 N.E.2d at 495.

■ Based upon this precedent, we conclude that plaintiff's evidence was sufficient to create a genuine issue of material fact. Tate's "expert" affidavit expressly states that the order picker was defective and proximately caused plaintiff's injuries. It is for the trier of fact to determine whether the order picker was defective at the time it left the control of defendant. See *Samansky v. Rush-Presbyterian-St. Luke's Medical Center*, 208 Ill. App. 3d 377, 390, 567 N.E.2d 386, 395 (1990). It is also for the trier of fact to determine whether the defective condition of the order picker, or the alleged negligence of plaintiff, Caterpillar, Cat Lift Trucks or Calumet Lift Services, was the proximate cause of plaintiff's injuries. See *Samansky*, 208 Ill. App. 3d at 390, 567 N.E.2d at 395. While defendant alleges that Tate's opinions are "contradicted by the vast majority of evidence," this argument supports our finding that a question of fact exists. Accordingly, we hold that summary judgment should not have been entered on this record. See *Stewart*, 153 Ill. App. 3d at 1081, 506 N.E.2d at 785.

Defendant, however, attempts to argue that summary judgment was proper because: (1) the "trial court properly followed the law," (2) "Tate's opinions are pure speculation and set forth only mere possibilities," (3) "Tate's affidavit is defective and does not eliminate other causes," and (4) plaintiff alleged "two competing theories *** [of] liability." For the following reasons, we disagree with each of defendant's contentions.

First, the above precedent clearly illustrates that the trial court was incorrect in holding that "for the [p]laintiff to prevail under these circumstances, he must eliminate misuse and all other causes before a cause of action can continue on a theory of defective design." Again, "[t]here is no requirement that plaintiff must disprove all other possible causes." *Tulgetske*, 86 Ill. App. 3d at 1038, 408 N.E.2d at 495. Second, a review of the affidavit reveals that these opinions were not based on speculation, guess, or conjecture, but instead, upon facts obtained by an examination of the order picker and a number of documents, including, but not limited to the service history of the order picker, service and parts manuals, operation and maintenance manual, written accident reports generated near the time of the incident and the depositions of Charles Davis, Krista Mayo, William McMorris, Margaret Persico, and Larry Stanford. Third, while plaintiff is not required to do so at this stage, both plaintiff's testimony and Tate's affidavit actually rebut defendant's contention that misuse or poor maintenance caused the accident. Plaintiff testified that he had no problems with the machine's operation and that he did not run into any object with the order picker. Tate's affidavit specifically states that "the only remaining explanation for the break in the subject hose is that it got jammed at the pulley and subsequent motion of the operator platform/mast pulled the hose in two, as shown in great detail above." Fourth, the Code of Civil Procedure (Code) allows a party to plead alternative theories of recovery in situations where a party is in doubt as to who is responsible for his injury. 735 ILCS 5/2—613 (West 2004). The Code states, "[a] bad alternative does not affect a good one." 735 ILCS 5/2—613(b) (West 2004).

Defendant also claims that our holding in *Sanchez v. Firestone Tire & Rubber Co.*, 237 Ill. App. 3d 872, 604 N.E.2d 948 (1992), requires that we affirm the trial court's judgment. We disagree.

The plaintiffs in *Sanchez* purchased an inner tube from a manufacturer and tires from a store, which installed the inner tube and tires. The plaintiffs subsequently sued the manufacturer after the inner tube lost air pressure while plaintiffs were operating their vehicle. On appeal, we found plaintiffs' cause of action could not survive due to the fact that the plaintiffs' expert's testimony indicated nothing more than a mere possibility that the inner tube caused the plaintiffs' injuries. *Sanchez*, 237 Ill. App. 3d at 874-75, 604 N.E.2d at 950.

Because we have already found that Tate's opinions were not based on speculation, guess, or conjecture, but instead upon facts obtained by an examination of the order picker and a number of documents, we find *Sanchez* distinguishable from the present case. Moreover, the fact

that Tate never examined the hose is of no consequence to this appeal. Again, Illinois law clearly states a products liability case can be established based on circumstantial evidence and thus the actual product in question need not be produced. *Sanchez*, 237 Ill. App. 3d at 874, 604 N.E.2d at 949-50; *Stewart*, 153 Ill. App. 3d at 1081, 506 N.E.2d at 785.

■ Plaintiff also contends that the trial court erred in denying his request for leave to file a fourth amended complaint. Plaintiff's fourth amended complaint sought to plead that a "guard adjacent to the hose" was the cause of plaintiff's injuries. Whether to permit or refuse amendments to pleadings is committed to the trial court's discretion, and we will not disturb its determination absent an abuse of discretion. *Meyers v. Rockford Systems, Inc.*, 254 Ill. App. 3d 56, 66, 625 N.E.2d 916, 923 (1993).

At the outset, we note that plaintiff only requested leave to amend after defendant was awarded summary judgment. Here on appeal, defendant argues that plaintiff's request for leave was properly denied because "[p]laintiff has already lost a motion for summary judgment on the issue of pulley design." Our above holding that summary judgment should not have been entered on this record, however, removes the basis for which plaintiff's request for leave was denied. Thus, we reverse the trial court's denial of plaintiff's request for leave to file a fourth amended complaint.

For the foregoing reasons, we reverse the trial court's judgment awarding defendant summary judgment and denying plaintiff's motion for leave to file a fourth amended complaint and remand the matter for further proceedings.

Reversed and remanded.

HOLDRIDGE, P.J., and CARTER, J., concur.