CAGNEY HELMS *et al.*, Plaintiffs-Appellants, v. THE CHICAGO PARK DISTRICT, Defendant-Appellee.

First District (1st Division) No. 1—92—0066

Opinion filed February 14, 1994.

Gary S. Tucker, of Chicago, for appellants.

Gessler, Flynn, Fleischmann, Hughes & Socol, Ltd., of Chicago (Terence E. Flynn, William P. Jones, and Steven Robert Verr, of counsel), for appellee.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiffs Cagney and Lisa Helms appeal an order of the circuit court of Cook County granting summary judgment to defendant Chicago Park District (Park District) in a personal injury action. For the reasons that follow, we affirm.

The record on appeal indicates the following facts. During the day of November 6, 1984, Cagney used ring station number 8 (Ring Station), part of an 18-station exercise course known as the Perrier-Parcourse Fitness Circuit in Lincoln Park, Chicago, Illinois (Fitness Circuit). On that day, defendant was in possession and control of the park and equipment. The Ring Station consists of three wooden columns that support three horizontal steel bars set at different elevations. A pair of noncircular steel rings hangs from chains attached to each steel bar; each pair of rings hangs at a different elevation. Cagney Helms, while using the Ring Station, lost his grip on a pair of rings and fell to the asphalt surface underneath the Ring Station. Following this fall, Cagney was rendered quadriplegic.

Cagney Helms and his wife Lisa filed suit against the Park District and other defendants. The record indicates that plaintiffs have reached settlements with the other defendants named in the initial complaint. Cagney charged the Park District with ordinary negligence and willful and wanton misconduct. Lisa did the same in bringing her claim for loss of consortium. On December 29, 1987, the Park District moved for summary judgment.

The parties took a number of depositions in connection with the motion for summary judgment. In his deposition, Cagney Helms indicated he was 27 years old at the time of his injury. Cagney stated that he had an associate's degree in physical education. According to Cagney, his training was such that it qualified him to be an assistant to a park district physical fitness instructor.

Cagney stated that he had used all of the stations of the Fitness

Circuit prior to November 6, 1984. Cagney indicated that he had used the Ring Station approximately 10 times in 1984 prior to November 6 of that year. Cagney stated that he had read the sign at the Ring Station before the accident and saw a picture that showed a person grabbing the rings and rotating his hips. Cagney stated that he understood this sign to demonstrate an exercise for the use of the rings. Cagney identified a photograph of the sign that was marked as an exhibit and included in the record. This exhibit does show a sign depicting a man grabbing a set of rings over his head and rotating. Below the picture, the sign states as follows:

> "Grip rings of easy reach; keep feet together on ground beneath rings. Relax and hang from rings.
>
> Move body in clockwise circle to your par. Recover. Repeat in counter-clockwise circle to your par."

Below these instructions, the sign shows a chart indicating a number of rotations for different fitness levels or "pars."

Cagney indicated that prior to November 6, 1984, he would use the rings to turn upside-down by pulling himself up and bringing his legs backward over his head and toward the ground behind him. Cagney stated that he learned to do this on his own. Cagney indicated that he intended to exercise his triceps in this manner. Cagney stated that this was different from the demonstration on the sign.

Cagney indicated that on November 6, 1984, he had packed a lunch to eat in the park before exercising. Cagney also indicated that he drank three or four cans of beer at the park approximately $1^1/2$ hours prior to the accident. Cagney further indicated that he had another can of beer in his jacket pocket at the time of the accident.

Cagney indicated that he ate and drank beer with another person who was not present at the time of the accident. Cagney also indicated that he jogged and performed 100 sit-ups before reaching the Ring Station. Cagney indicated that he had a radio that he placed on top of the aforementioned sign. According to Cagney, he then went over to the highest set of rings and stood underneath them. Cagney stated that he had to jump approximately six inches to reach these rings. Cagney indicated that in one motion, he pulled himself up and, with his arms still extended, brought his knees up to his chest and over his head when he slipped and fell to the asphalt. According to Cagney, his head was pointed toward the asphalt, with his chin curled toward his chest when he slipped. Cagney indicated that he could not move after the fall.

Cagney stated that the right-hand ring felt slippery and that there seemed to be grease or lotion on that ring. Cagney stated that he looked at the rings before he used them. Cagney indicated that the rings, chains and bar did not appear damaged on that day.

Following a hearing on the matter, the trial court granted summary judgment in favor of the Park District. Plaintiffs now appeal.

## I

■ Summary judgment is properly granted if the pleadings, depositions, and admissions on file, together with any affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (*Alop v. Edgewood Valley Community Association* (1987), 154 Ill. App. 3d 482, 484, 507 N.E.2d 19, 21.) Although a plaintiff is not required to prove his or her case at the summary judgment stage, he or she must present some evidentiary facts to support the elements of the claim. *Cozzi v. North Palos Elementary School District No. 117* (1992), 232 Ill. App. 3d 379, 382, 597 N.E.2d 683, 685.

## II

■ Cagney alleges that the Park District was negligent and therefore must show: (1) a duty to conform to a certain standard of conduct; (2) a breach of that duty; (3) proximate cause; and (4) damages. (See *Ferentchak v. Village of Frankfort* (1985), 105 Ill. 2d 474, 480, 475 N.E.2d 822, 825.) Lisa's action for loss of consortium is based upon the theory of transferred negligence, whereby the defendant's duty to the injured spouse is transferred to the deprived spouse. (*Casey v. Pohlman* (1990), 198 Ill. App. 3d 503, 509, 555 N.E.2d 1221, 1225.) In this case, the trial court based its decision on *Alop* and *Young v. Chicago Housing Authority* (1987), 162 Ill. App. 3d 53, 515 N.E.2d 779, which concern the duty of a landowner toward a child who enters upon the land and falls from playground equipment. This case involves an adult.

Nevertheless, the determination of whether a duty exists is a question of law. (*Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 525, 513 N.E.2d 387, 396.) A defendant is entitled to judgment when there is no duty owed to plaintiff as a matter of law. (*Hootman v. Dixon* (1984), 129 Ill. App. 3d 645, 472 N.E.2d 1224.) Indeed, a plaintiff cannot recover for either ordinary negligence or willful and wanton misconduct unless the defendant has breached a duty owed to the plaintiff. (*Cozzi*, 232 Ill. App. 3d at 383, 597 N.E.2d at 686; *Young*, 162 Ill. App. 3d at 55, 515 N.E.2d at 781-82.) Thus, this court turns to consider whether the Park District owed plaintiffs a duty.

## III

■ Section 3—102(a) of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (Ill. Rev. Stat. 1985, ch. 85, par. 3—102(a)) provides in part that the Park District

"has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom [the Park District] intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used." (Ill. Rev. Stat. 1985, ch. 85, par. 3—102(a).)

Thus, assuming *only for the sake of analyzing the question of duty* that the Tort Immunity Act otherwise fails to provide immunity (as the former question precedes the latter), none exists and the claim must be determined by normal rules of tort liability. See *Clark v. City of Chicago* (1980), 88 Ill. App. 3d 760, 764, 410 N.E.2d 1025, 1029.

■ The injury at issue here occurred after the effective date of the Premises Liability Act (Ill. Rev. Stat. 1985, ch. 80, par. 301 *et seq.*). That statute provides that the liability of an owner or occupier to one who enters upon land for a recreational purpose is governed by a statute now known as the Recreational Use of Land and Water Areas Act (RULWAA). (See Ill. Rev. Stat. 1985, ch. 80, par. 304; Ill. Rev. Stat. 1989, ch. 70, par. 31.) The RULWAA generally relieves an owner or occupier of land of the duty to keep the premises safe for entry or use by any person for recreational purposes or to warn any such person of a dangerous condition on the land. Ill. Rev. Stat. 1985, ch. 70, par. 33.

It must be noted that the definition of a "recreational purpose" was far narrower at the time of the injury here than the definition in the current version of the RULWAA. (Compare Ill. Rev. Stat. 1985, ch. 70, par. 32, with Ill. Rev. Stat. 1989, ch. 70, par. 32.) However, this court does not need to decide whether Cagney's activities in this case fell within the scope of the old RULWAA. Even if Cagney entered Lincoln Park for a "recreational purpose" as defined by the old RULWAA, that statute would not apply to plaintiffs' claims for willful and wanton misconduct (Ill. Rev. Stat. 1985, ch. 70, par. 36), thus requiring a resolution of the question of duty.

IV

The duty owed by the Park District as the possessor of land depends on the relationship between the Park District and Cagney Helms. As noted above, the injury at issue here occurred after the effective date of the Premises Liability Act, which abolished the common law distinction between invitees and licensees, but preserved the law regarding trespassers. (Ill. Rev. Stat. 1985, ch. 80, pars. 302, 303.) Thus, the issue becomes whether Cagney Helms was a trespasser or a nontrespasser.

## A

■ A trespasser is one who enters upon the land of another for his or her own purposes without permission, invitation or right. (*Sumner v. Hebenstreit* (1988), 167 Ill. App. 3d 881, 885, 522 N.E.2d 343, 345.) A landowner owes a trespasser only the duty not to willfully and wantonly injure the trespasser and to use ordinary care to avoid injuring the trespasser after discovering him or her in a place of danger. *Sumner*, 167 Ill. App. 3d at 885, 522 N.E.2d at 345.

■ The Park District argues Cagney was a trespasser because: (1) he violated the code of the Chicago Park District by bringing in, consuming and giving away alcoholic liquor in the park; and (2) he abused the Ring Station. Plaintiffs respond that these arguments sound more like an allegation of comparative negligence than the characterization of Cagney as a trespasser or nontrespasser. The Park District has failed to cite any authority in support of its arguments, resulting in waiver on appeal. Therefore, this court turns to consider whether the Park District owed Cagney a duty as a nontrespasser.

## B

■ The Illinois Supreme Court, in *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 343 N.E.2d 465, stated that the proper standard of care to be imposed on a possessor of land regarding an invitee is contained in section 343 of the Restatement (Second) of Torts (1965). (*Genaust*, 62 Ill. 2d at 468, 343 N.E.2d at 472.) A possessor of land is liable to an invitee if and only if he or she: (1) knows or by the exercise of reasonable care should know of a condition on the land and should realize that it poses an unreasonable risk of harm; (2) should expect that the invitee will not discover or realize the danger or will fail to protect himself from it; and (3) fails to exercise reasonable care to protect invitees from the danger. (*Genaust*, 62 Ill. 2d at 468, 343 N.E.2d at 472.) This standard has not been significantly altered by the passage of the Premises Liability Act. *Alcorn v. Stepzinski* (1989), 185 Ill. App. 3d 1, 6, 540 N.E.2d 823, 825-26.

■ The Park District argues that summary judgment was proper because the risk posed by the Ring Station was an open and obvious one. That a condition on land may be "open and obvious" does not operate as a *per se* bar to liability. (*Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 147, 554 N.E.2d 223, 230.) Nevertheless, a condition may be so blatantly obvious that a defendant cannot reasonably be expected to anticipate that people will fail to protect themselves from any danger posed by the condition. (*Ward*, 136 Ill. 2d at 148, 554 N.E.2d at 230.) An owner or possessor of land has no duty to remedy conditions presenting risks so obvious that even a child would gener-

ally be expected to appreciate and avoid them. *Ward*, 136 Ill. 2d at 148, 554 N.E.2d at 230.

■ Viewed in this framework, the trial court's reliance on *Alop* and *Young* was not improper. These cases, as well as those following them (*e.g.*, *Schnering v. Midlothian Park District* (1991), 219 Ill. App. 3d 664, 579 N.E.2d 908), have held that the risk of slipping or falling from a piece of playground equipment to a hard surface is obvious even to a child. Indeed, this case is factually similar to *Alop*, insofar as the record in both cases suggest that the injured party misused the equipment at issue.

Plaintiffs argue that the danger was not open and obvious. Plaintiffs argue that the rings of the Ring Station were poorly designed because they were made from a smooth metal—*i.e.*, galvanized steel—and had flat surfaces. However, plaintiffs' sole support for this argument is allegations made in their fourth amended complaint. The Park District denied the allegations of a defect. In such a case, the mere allegation of a defect may prevent dismissal for failure to state a cause of action, but plaintiffs must produce evidence of a defect to survive summary judgment. Compare *Kirby v. Macon Public School District No. 5* (1988), 169 Ill. App. 3d 416, 523 N.E.2d 643 (motion to dismiss), and *Scarano v. Town of Ela* (1988), 166 Ill. App. 3d 184, 520 N.E.2d 62 (same), with *Salinas v. Chicago Park District* (1989), 189 Ill. App. 3d 55, 60, 545 N.E.2d 184, 186-87 (summary judgment).

Plaintiffs also argue that the danger was not open and obvious because the rings Cagney used were above his eye level. However, absent any evidence of a defect in the Ring Station, the danger at issue is the open and obvious risk of falling from the rings.

In sum, given the record on appeal, the Park District did not owe Cagney Helms a duty to warn him or protect him from the obvious danger of falling from the Ring Station. Thus, the Park District cannot be liable to plaintiffs and the entry of summary judgment was proper.

For all of the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

BUCKLEY and O'CONNOR, JJ., concur.