JAMES E. MURPHY *et al.*, Plaintiffs-Appellants, v. GENERAL MOTORS CORPORATION *et al.*, Defendants (Palos Auto Glass and Trim, Inc., Defendant-Appellee).

First District (6th Division)   No. 1—95—1411

Opinion filed October 18, 1996.

ZWICK, P.J., dissenting.

Shawn A. Warner, of Patrick J. Kenneally, Ltd., of Chicago, for appellants.

Russell W. Hartigan and Patrick H. O'Connor, both of Russell W. Hartigan & Associates, of Chicago, for appellee.

JUSTICE LEAVITT[1] delivered the opinion of the court:
On August 19, 1989, the plaintiff, James E. Murphy, was

---

[1]Justice Leavitt was substituted on the panel after Justice Egan's retire-

employed as a police officer by the Village of Palos Park police department (the Department). On that day, his squad car was a 1988 Chevrolet Caprice manufactured by the defendant General Motors Corp. (GMC). While driving the car after responding to a call about a burglar alarm, Officer Murphy drove over a bump in the road. As he did, he heard a "pop," and the front seat of the car fell backwards, slid off of its track and collapsed into the rear seat of the vehicle. Officer Murphy, now facing upward, lost control of the vehicle, and he was injured as it ran off the roadway into a ditch.

Officer Murphy brought this action, alleging that various acts of negligence by the defendants caused his accident. Murphy's wife, Susan, brought an action for loss of consortium. Specifically, as concerns this appeal, the plaintiffs alleged that two months before the accident, defendant Palos Auto Glass & Trim, Inc. (Palos Auto), had negligently repaired the car seat frame. The trial judge entered summary judgment in favor of Palos Auto, ruling that the plaintiffs could not establish that Palos Auto proximately caused the accident. Specifically, the judge ruled that an affidavit submitted by the plaintiffs' expert was speculative as to the cause of the accident. The plaintiffs contend their expert is qualified to testify and that they have, therefore, presented evidence sufficient to raise a jury question as to Palos Auto's liability.

Our review of an order granting summary judgment is *de novo. Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102, 607 N.E.2d 1204 (1992). Summary judgment is appropriate only when the pleadings, together with any depositions, admissions, or affidavits on file, demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1992); *La Salle National Bank v. Skidmore, Owings & Merrill*, 262 Ill. App. 3d 899, 902, 635 N.E.2d 564 (1994). We construe all reasonable inferences to be drawn from the facts in a light most favorable to the nonmoving party. *La Salle National Bank*, 262 Ill. App. 3d at 902. Although the respondent need not prove his case at the summary judgment stage, he is required to present evidentiary facts to support the elements of his cause of action. *Helms v. Chicago Park District*, 258 Ill. App. 3d 675, 679, 630 N.E.2d 1016 (1994). Summary judgment in favor of the defendant is appropriate where the plaintiff has not established an essential element of the cause of action. *Webber v. Armstrong World Industries, Inc.*, 235 Ill. App. 3d 790, 795-96, 601 N.E.2d 286 (1992);

ment. Justice Leavitt has reviewed the briefs and record on appeal filed with this court and has otherwise fully participated in the disposition of this case.

*Ray Dancer, Inc., v. DMC Corp.*, 230 Ill. App. 3d 40, 50, 594 N.E.2d 1344 (1992).

Palos Auto's motion for summary judgment asserted that because the car seat had been destroyed, the plaintiffs could not prove that its conduct in repairing the seat frame proximately caused the plaintiffs' injuries. Of course, in order to prevail on a negligence claim, a plaintiff must show that a defendant's breach of a duty proximately caused the plaintiff's injuries. *Ward v. K mart Corp.*, 136 Ill. 2d 132, 140, 554 N.E.2d 223 (1990). To defeat a motion for summary judgment, a plaintiff must establish that there is a reasonable certainty that the defendant's acts caused the injury. *Schultz v. Hennessy Industries, Inc.*, 222 Ill. App. 3d 532, 540 (1991). In this regard, the record reveals the following.

Approximately two months prior to Officer Murphy's accident, the Department had contracted with Palos Auto to repair the driver's seat in Murphy's squad car. Robert Norris, the owner of Palos Auto, testified at his deposition that he had examined the seat frame before repairs were undertaken. His company had repaired this type of seat before, and he was familiar with it. Norris stated that the seat his company repaired was a GMC seat. Without consulting GMC's product specifications, an employee of Palos Auto repaired the seat back by performing a "mig" weld on its frame. GMC's product specifications provide that "spot resistance" welding should be used to repair these seats.

Following the accident, the squad car was taken to an auto repair business owned by Raymond Holzinger. Holzinger testified at his deposition that when the vehicle arrived, he examined the front seat and concluded that, due to its condition, it could not be repaired. Therefore, the front seat was removed from the vehicle and a replacement front seat was installed. After removing the seat, Holzinger disposed of it. Before he discarded it, however, he examined it and discovered that repair work had previously been performed on the seat frame. Specifically, he noted an apparent break in the frame that had been repaired by a weld. Although the weld had not broken in the accident, there was a "bend" in the frame one to two inches from the point of the weld.

In their opposition to Palos Auto's motion for summary judgment, the plaintiffs presented the affidavit of Dr. Crispin Hales, an engineering and metallurgy expert. Hales reviewed the plaintiffs' complaint and the depositions of Holzinger, Norris and Murphy, in addition to the engineering specifications for the seat frame issued by General Motors. These specifications included information about the seat frame's metal composition and physical properties. The specifi-

cations also indicated that only spot-welding should be used to repair such seats. Based upon the above information, Hales was of the opinion that, assuming the seat frame had been manufactured in accordance with GMC's specifications, the mig weld performed by Palos Auto would have reduced the strength of the seat frame and caused it to fail. Hales also offered a second opinion, based on the physical properties of the seat frame, that the defendant should have replaced rather than repaired the seat.

The trial judge "struck" Dr. Hales' affidavit in its entirety because she considered his opinions to be speculative. She reasoned that because the seat was unavailable, the plaintiffs could not presume the fact that the seat had, in fact, been manufactured according to GMC's specifications. The judge ruled that, as a result, the plaintiffs were precluded from relying upon Hales' opinion as to the propriety of mig welding. Therefore, the plaintiffs could not establish that Palos Auto's negligence reduced the strength of the seat frame. The trial judge did not state any reason as to why Hales' second opinion was inadmissible. Specifically, the judge found:

> "[W]ithout the seat frame this case is thrown into a speculative arena ... The problem with the expert's affidavit is that one has to presume that the seat back was manufactured in accordance with the manufacturer's drawings, specifications, and additional information provided by GM. Without the seat back, how can this presumption be made? *** He [the plaintiffs' expert] cannot make that presumption that this was built in accordance with specifications because he hasn't seen it, because the seat frame is gone. *** I don't think his testimony is competent because it presumes facts that cannot be supported by the evidence."

In denying the plaintiffs' motion to reconsider the entry of summary judgment, the judge stressed that the seat frame had been innocently destroyed; hence, the grant of summary judgment was not to be interpreted as an imposition of a sanction against the plaintiffs.

■ Supreme Court Rule 191(a) (134 Ill. 2d R. 191(a)) directs that affidavits in opposition to a motion for summary judgment "shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto." Here, the trial judge concluded that Hales' opinion was not based on provable facts—that it was a conclusion. Implicit in the judge's ruling is the assumption that the plaintiffs could not demonstrate to the trier of fact that the seat frame was manufactured in accordance with engineering specifications issued by GMC. In the absence of proof regarding this predicate fact, Hales' opinion that Palos Auto's repair work caused the seat to collapse

was, indeed, speculative and had no basis in admissible facts. However, we do not believe that absence of the car seat compels the result reached by the judge.

■ True, an expert witness's opinion cannot be based on conjecture or speculation (*Dyback v. Weber*, 114 Ill. 2d 232, 244, 500 N.E.2d 8 (1986)); however, an expert's testimony is "but 'the opinion of the witness given on facts assumed to be true,' " and it is for the trier of fact to determine the facts. *Damron v. Micor Distributing, Ltd.*, 276 Ill. App. 3d 901, 911, 658 N.E.2d 1318 (1995), quoting *McKenzie v. S.K. Hand Tool Corp.*, 272 Ill. App. 3d 1, 8, 650 N.E.2d 612 (1995). In reaching the first of his two opinions, Hales assumed a fact—that the seat was manufactured according to design specifications. The plaintiffs did not offer Hales' affidavit for the purpose of proving that the seat was manufactured properly. Nonetheless, the trial judge concluded that the fact assumed by Hales could not be proved. We believe the record contains sufficient evidence to raise a jury question as to that fact. It is this evidence that Hales relied upon in forming his opinion that the defendant's mig weld of the seat contributed to its failure. Therefore, his first opinion was admissible.

Although this is not a product liability case as to the defendant, proof as to whether the seat was defectively manufactured implicates aspects of product liability jurisprudence. In such cases, "the absence of the product at trial is not fatal to the plaintiff's cause." *Samansky v. Rush-Presbyterian-St. Luke's Medical Center*, 208 Ill. App. 3d 377, 389, 567 N.E.2d 386 (1990). Indeed, experts in product liability cases often rely on circumstantial evidence to form their opinions as to whether a product is defective. *E.g.*, *H&H Sand & Gravel Haulers Co. v. Coyne Cylinder Co.*, 260 Ill. App. 3d 235, 249, 632 N.E.2d 697 (1994); *Sanchez v. Firestone Tire & Rubber Co.*, 237 Ill. App. 3d 872, 874, 604 N.E.2d 948 (1992). Here, there is circumstantial evidence that is admissible to support Hales' opinions. Specifically, Hales reviewed GMC's designs and specifications for the type of seat that was installed in Officer Murphy's car. He also reviewed the depositions of Raymond Holzinger, James Murphy and Robert Norris.

Norris' deposition testimony reveals that the Department brought Officer Murphy's squad car to him for repair several weeks before the accident. The invoice reflected that the repair occurred on June 26, 1989, less than two months before the accident. Norris stated unequivocally that the seat his company repaired was a GMC seat. He had repaired over 50 GMC seats previously, including 25 all-steel seats of the type involved in this case. He had repaired at least three or four 1988 Caprice bucket seats.

Norris examined the seat frame before repairs were undertaken

and concluded that the seat frame had "broken." By "broken," Norris meant that "it was no longer functional as it was designed to function." He did not know whether the frame was actually broken in two or just bent. He did observe that the seat was "leaning back" at a 45 degree angle and was loose to the extent that it could be moved manually 20 to 25 degrees in either direction. We note also that, at his deposition, Raymond Holzinger stated that when he examined the seat after Officer Murphy's accident, he noted that the seat frame had been welded, which indicated to him that it had previously been broken. From these statements, a jury could infer that the seat was not in the condition in which GMC delivered the car to the Department.

Such an inference is further supported by Norris' statement that, based on his experience as an auto repairer, the reason the seat frame had broken was because the officer (not Officer Murphy) who had been using it until that time weighed more than the seat frame could withstand. Although Norris was unaware of any GMC-recommended weight limit for the seat, at the time he repaired the seat, he suggested to the Department that the officer no longer drive the vehicle "because of his girth." Seat frames break for various reasons: "[s]ometimes they break as a result of the size of the person, sometimes they'll break as a result of an accident. Sometimes they'll break as a result of wearing out, portions of the seat will wear out and break." Nowhere in Norris' deposition is there any indication that he or his employee that repaired the seat noticed a defect in the seat that was unrelated to Norris' belief that the cause of the seat's failure was the excessive weight of the officer who drove the car before the defendant repaired it. From this, a jury could conclude that the seat was originally broken in this manner. Also, Holzinger stated that he noticed a "bend" in the seat frame located within two inches of the weld. With this evidence, the jury could rely on the opinion of Hales to conclude that the defendant's actions in repairing the seat by means of a mig weld weakened the frame, thus causing the plaintiff's injuries. Thus, we hold that Hales' opinion about use of a mig weld was admissible.

We also hold that Hales was competent to testify as to his second opinion, one that is not predicated upon whether the seat was manufactured properly: that a seat of the type involved here should always be replaced, rather than repaired, after breaking. Hales reviewed GMC's design specifications to reach his second opinion. Furthermore, Norris, in his deposition, acknowledged that replacement is often the appropriate action to take in regard to a broken seat. He stated that, when one of his mechanics looks at a broken

seat, he determines whether to recommend complete replacement or mig welding of the seat. Indeed, some breaks, such as in a "track assembly" (the mechanism that allows the seat to move back and forth), would prompt Norris to probably automatically recommend replacement. Norris would convey that recommendation to the owner of the car. Ordinarily, if Norris recommended to replace the seat, but the owner insisted on repair, Norris would make a note reflecting this on the bill. The bill covering repair of the vehicle contains no such notation. We believe there is sufficient evidence in the record to raise a genuine issue of material fact as to whether the defendant should have replaced, rather than repaired, the seat. Thus, on this basis alone, the trial judge should not have stricken the expert's affidavit.

For all of the foregoing reasons, the trial judge erred in striking the affidavit of the plaintiff's expert. As a result, the trial judge erred in entering summary judgment for the defendant. Therefore, the judgment is reversed, and this cause is remanded for further proceedings.

Reversed and remanded.

McNAMARA, J., concurs.

PRESIDING JUSTICE ZWICK, dissenting: ,
I respectfully disagree with the majority's conclusion that the trial court improperly entered summary judgment in favor of defendant Palos Auto. In my view, it was required.

To defeat the motion for summary judgment, plaintiffs were obligated to present evidentiary facts establishing a reasonable certainty that the actions of Palos Auto caused the injury. See *Bellerive v. Hilton Hotels Corp.*, 245 Ill. App. 3d 933, 936, 615 N.E.2d 858 (1993); *Chmielewski v. Kahlfeldt*, 237 Ill. App. 3d 129, 137, 606 N.E.2d 641 (1992). The plaintiffs in the instant case must fail in this endeavor due to the unavailability of the subject seat frame. In light of plaintiffs' expert's opinion, the allegation of negligence asserted here against Palos Auto necessarily required proof of the absence of a manufacturing defect in the seat frame. This proof could never have been presented by plaintiffs where the frame had been discarded prior to a thorough examination. It must be noted that the trial court had previously entered summary judgment in favor of GMC, the manufacturer of the seat frame, based upon plaintiffs' inability to prove the existence of a manufacturing defect. Because plaintiffs would never be able to prove that the seat frame had been manufactured according to the design specifications, on which their expert's opinion was premised, the trial court correctly entered summary judgment in favor of Palos Auto. See *Fooden v. Board of Governors of*

*State Colleges & Universities*, 48 Ill. 2d 580, 587, 272 N.E.2d 497 (1971).

As the majority acknowledges, this is not a product liability case, and such precedents have no bearing on the case at bar. However, even if the principles governing product liability actions were applicable here, the trial court's ruling would still be correct.

Although a product liability claim may be proven by direct or circumstantial evidence (see *McKenzie v. SK Hand Tool Corp.*, 272 Ill. App. 3d 1, 7, 650 N.E.2d 612 (1995); *Varady v. Guardian Co.*, 153 Ill. App. 3d 1062, 1066-67, 506 N.E.2d 708 (1987); *Ralston v. Casanova*, 129 Ill. App. 3d 1050, 1059-60, 473 N.E.2d 444 (1984)), it is clear that preservation of the allegedly defective product is of the utmost importance in both proving and defending against a strict liability action. *Ralston*, 129 Ill. App. 3d at 1057. The Illinois Supreme Court, while considering a claim for negligent spoliation of evidence, recently recognized that the loss of an allegedly defective product prior to testing would preclude the plaintiff from proving a products liability claim. *Boyd v. Travelers Insurance Co.*, 166 Ill. 2d 188, 196-97, 652 N.E.2d 267 (1995).

When circumstantial evidence is relied upon in a product liability action, it must justify an inference of probability, as distinguished from mere possibility, because liability cannot be predicated on speculation, guess, or conjecture. *McKenzie*, 272 Ill. App. 3d at 7; *Varady*, 153 Ill. App. 3d at 1067. Summary judgment in favor of the defendant is appropriate where the plaintiff is unable to prove that the injuries were proximately caused by a defect that existed at the time the product left the manufacturer's control. See *Loy v. Firestone Tire & Rubber Co.*, 168 Ill. App. 3d 503, 505-07, 522 N.E.2d 848 (1988); *Shramek v. General Motors Corp.*, 69 Ill. App. 2d 72, 77-78, 216 N.E.2d 244 (1966)). Thus, even under product liability principles, the trial court's actions were correct.

Moreover, the majority holds that the trial court erred in entering summary judgment because Hales was competent to testify as to his "second opinion" that a seat of the type involved here should always be replaced, rather than repaired. This issue was not raised or argued by appellants in their briefs. In my view, the majority exceeded its proper role as it is neither the function nor the obligation of this court to act as an advocate or search the record for error. *Mielke v. Condell Memorial Hospital*, 124 Ill. App. 3d 42, 48-49, 463 N.E.2d 216 (1984). Accordingly, this contention should be deemed waived and should not serve as the basis for reversal of the trial court's order.

For the foregoing reason, I would affirm the decision of the circuit court of Cook County.