FOURTH DIVISION
 March 20, 1997
 











No. 1-95-2647 

JOSEPH BRAVERMAN, ) APPEAL FROM THE
 ) CIRCUIT COURT OF
 Plaintiff-Appellant, ) COOK COUNTY
 )
 v. )
 )
KUCHARIK BICYCLE CLOTHING COMPANY, ) HONORABLE
 ) GARY L. BROWNFIELD,
 Defendant-Appellee. ) JUDGE PRESIDING.


 JUSTICE McNAMARA delivered the opinion of the court:
 Plaintiff, Joseph Braverman, was thrown from his bicycle
during a cycling race and suffered injuries to his head. 
Plaintiff brought this action against defendant, Kucharik Bicycle
Clothing Company (Kucharik), alleging that he was wearing a
Kucharik leather safety helmet at the time of the accident. 
Plaintiff alleged that the helmet was defectively designed in
that it did not provide adequate protection when being worn in an
ordinary and usual manner. During discovery, defendant became
aware that plaintiff could not locate the helmet involved in the
accident. Defendant moved for summary judgment on the ground
that the helmet was lost. The trial court granted defendant's
motion. Plaintiff now appeals.
 Our review of an order granting summary judgment motion is
de novo. Murphy v. General Motors Corp., 285 Ill. App. 3d 278,
279, 672 N.E.2d 371, 372 (1996). Summary judgment is proper only
when the pleadings, together with any depositions, admissions, or
affidavits on file demonstrate that there is no genuine issue of
material fact and that the moving party is entitled to judgment
as a matter of law. 735 ILCS 5/2-1005(c)(West 1992); Murphy, 285
Ill. App. 3d at 279, 672 N.E.2d at 372. A summary judgment
motion asks whether the nonmovant has presented any evidence to
raise a genuine issue of material fact. Ralston v. Casanova, 129
Ill. App. 3d 1050, 1056, 473 N.E.2d 444, 449 (1984). All
reasonable inferences drawn from the facts must be construed in
the light most favorable to the nonmoving party. Murphy, 285
Ill. App. 3d at 279, 672 N.E.2d at 372. Although a plaintiff
need not prove his case at the summary judgment stage, he must
present enough evidence in support of each element of his cause
of action to create a genuine issue of material fact. H & H Sand
& Gravel Haulers Co. v. Coyne Cylinder Co., 260 Ill. App. 3d 235,
248, 632 N.E.2d 697, 705 (1994); Mateika v. La Salle Thermogas
Co., 94 Ill. App. 3d 506, 508, 418 N.E.2d 503, 505 (1981). 
 The pleadings, admissions, affidavits, and depositions on
file here reveal the following pertinent facts. Plaintiff
described the helmet he wore at the time of the accident as a
"Kucharik Super Leather Hairnet Type Helmet." He claimed that he
purchased the helmet by mail order from Itala Velo Sport in
Florida. He was wearing the helmet when he was thrown from his
bicycle during a race in Wisconsin. In response to
interrogatories, plaintiff stated that it was "unknown at this
time who has the helmet." Plaintiff also stated that there had
never been any "alteration, modification, repair, maintenance
and/or service performed to or upon the product in question."
 Plaintiff identified Alex Tudor as an expert. Tudor is an
engineer who previously worked for Schwinn Bicycle Company and
currently works for Triodyne, Inc. Tudor opined that the
Kucharik Super Helmet was defectively designed, unreasonably
dangerous, and not fit for its intended use. The leather
polyester-filled helmet failed to provide any protection around
and above the ear area. Tudor stated that the helmet failed to
comply with the criteria for protective headgear for bicycle
users set by the American National Standards Institute (ANSI) and
the Snell Memorial Foundation. Tudor never tested or inspected
the actual helmet worn by plaintiff. In forming his opinions,
Tudor examined the helmet's specifications, the literature
accompanying the helmet, and an exemplar Kucharik Super Helmet
that plaintiff's attorneys acquired by advertising in a bicycle
magazine. He also reviewed plaintiff's deposition as well as the
deposition of plaintiff's doctor. Tudor observed that
defendant's literature essentially argued that its leather
hairnet helmet was superior to a hard shell plastic helmet. 
Tudor found this "180 degrees in opposition to all of the head
protective literature." Tudor also noted that Kucharik's
literature demonstrated the company's awareness of an existing
alternative design.
 Dr. George Bartl was plaintiff's treating physician. Bartl
testified in his deposition that plaintiff suffered lacerations
and abrasions above the hair line as a result of the accident. 
Plaintiff also had a linear fracture of the temporal area, a left
basilar skull fracture, and a left temporal lobe contusion. 
 Dr. Jeffrey Feldstein was retained by plaintiff as a medical
expert witness. In his affidavit, Feldstein explained that
plaintiff's head injuries were located in areas covered by the
Kucharik helmet. He opined that the injuries were of the type
that would be expected from someone not wearing a helmet. The
trial court struck an additional opinion of Feldstein's that a
hard shell plastic helmet might have prevented plaintiff's
injuries. The court found this last opinion outside the doctor's
expertise.
 In its motion for summary judgment, defendant argued that
"without the actual helmet involved in plaintiff's accident, he
can never prove his case." Defendant pointed out that, after
repeated requests to produce the helmet, plaintiff failed to do
so. Defendant stressed that plaintiff's expert never saw,
inspected, photographed, or tested the helmet plaintiff was
wearing. Plaintiff responded that the absence of the helmet is
not fatal to his cause of action. Plaintiff argued that, even
though he was not in possession of the actual helmet he wore, he
had set forth a prima facie case that the product's defective
design served as a proximate cause of his injuries.
 Following a hearing, the trial court granted summary
judgment in defendant's favor. The court did not strike the
testimony of plaintiff's expert or treating physician. The court
struck only Dr. Feldstein's opinion that a plastic shell helmet
may have prevented plaintiff's injuries. The court noted that
plaintiff would be able to show the condition of the product when
it left the manufacturer by use of Kucharik's literature and the
exemplar helmet. The court reasoned, however, that the absence
of the actual helmet involved in the accident would prejudice
Kucharik in trying to defend the case. For example, the court
observed, defendant could not show whether the helmet was altered
or modified after its purchase. The court entered judgment in
favor of Kucharik, therefore, "[b]ased upon *** the fact that the
evidence was lost." 
 To prevail at summary judgment in a product liability case, 
the plaintiff must present evidence that the injury or damage
resulted from a condition of the product, that the condition of
the product was unreasonably dangerous, and that the condition
existed at the time the product left the manufacturer's control. 
H & H Sand & Gravel Haulers, 260 Ill. App. 3d at 248, 632 N.E.2d
at 706; Samansky v. Rush-Presbyterian-St. Luke's Medical Center,
208 Ill. App. 3d 377, 389, 567 N.E.2d 386, 395 (1990). These
elements may be proved inferentially, by either direct or
circumstantial evidence. H & H Sand & Gravel Haulers, 260 Ill.
App. 3d at 248, 632 N.E.2d at 706; Mateika, 94 Ill. App. 3d at
508, 418 N.E.2d at 505. "Proper circumstantial evidence would
include either proof that tends to exclude other extrinsic causes
or expert testimony that the product was defective." H & H Sand
& Gravel Haulers, 260 Ill. App. 3d at 248-49, 632 N.E.2d at 706;
see also Mateika, 94 Ill. App. 3d at 508, 418 N.E.2d at 505.
 It is clear that preservation of the allegedly defective
product, if possible, is of the utmost importance in both proving
and defending against a strict liability action. Graves v.
Daley, 172 Ill. App. 3d 35, 38, 526 N.E.2d 679, 681 (1988);
Ralston, 129 Ill. App. 3d at 1057, 473 N.E.2d at 449. However,
the absence of the product is not fatal to a plaintiff's cause of
action. Murphy, 285 Ill. App. 3d at 282, 672 N.E.2d at 374;
Samansky, 208 Ill. App. 3d at 389, 567 N.E.2d at 395; see also
H & H Sand & Gravel Haulers, 260 Ill. App. 3d at 248-49, 632
N.E.2d at 705-6; Neighbors ex rel. American States Insurance Co.
v. City of Sullivan, 31 Ill. App. 3d 657, 659, 334 N.E.2d 409,
411 (1975). "It is possible to introduce sufficient evidence to
establish a prima facie case of strict liability even in the
absence of the allegedly defective product." Mateika, 94 Ill.
App. 3d at 510, 418 N.E.2d at 506. 
 Throughout this litigation, defendant's position has been
that plaintiff has absolutely no chance of defeating its motion
for summary judgment without the actual helmet involved in the
accident. In light of the above principles, we hold that no such
per se rule exists. We also find support for this conclusion in
a recent decision by the Illinois Supreme Court.
 In Boyd v. Travelers Insurance Co., 166 Ill. 2d 188, 201,
652 N.E.2d 267, 273 (1995)(Heiple, J., dissenting, joined by
Harrison, J.), the plaintiffs brought a strict liability action
against Coleman Company alleging that the company manufactured a
defective heater that caused an explosion and injured plaintiffs. 
The plaintiffs also brought an action against Travelers Insurance
Company, alleging that, following the accident, an adjuster from
Travelers took possession of the heater and subsequently lost it. 
A majority of the supreme court held that the plaintiffs had
stated a cause of action against Travelers for negligent
spoliation of evidence. The majority also went on to suggest
that the claims against Coleman and Travelers should be tried
simultaneously. The majority explained that "[t]he dominant
question is one of fact, whether the loss of the heater caused
plaintiffs to be unable prove their products liability claim
against Coleman, and it is common to all the parties." Boyd, 166
Ill. 2d at 199, 652 N.E.2d at 273. The majority rejected the
dissent's contention that the court should presume that the
"'loss of the heater deprived the plaintiffs of their lawsuit'
against Coleman." Boyd, 166 Ill. 2d at 200, 652 N.E.2d at 273. 
The majority explained:
 "An evidentiary presumption is improper here
 for two reasons. First, if plaintiffs can
 prove their underlying lawsuit against
 Coleman without the missing heater, then they
 have not been injured by Travelers' loss of
 it. This is entirely possible in the present
 case because plaintiffs may be able to prove
 their products liability action against
 Coleman through circumstantial evidence." 
 (Emphasis added.) Boyd, 166 Ill. 2d at 200,
 652 N.E.2d at 273. 
 The dissent disagreed, however, arguing that the plaintiffs'
action against Coleman could not proceed without the heater. The
dissent maintained: 
 "The plaintiffs were injured when a space
 heater blew up. That evidence is now
 missing. Without examining and testing that
 space heater, there is no possibility
 whatever that the plaintiffs could sustain an
 action against its manufacturer because of an
 alleged defect. The heater may have been
 perfect in every way. It may have been an
 accident waiting to happen. No one will ever
 know. It is gone. Gone with it is the
 plaintiffs' case against its manufacturer,
 the Coleman Company." Boyd, 166 Ill. 2d at
 202, 652 N.E.2d at 274 (Heiple, J.,
 dissenting, joined by Harrison, J.).
Nevertheless, the Boyd majority found it plausible that a
plaintiff can succeed through circumstantial evidence in a strict
liability action against a manufacturer even though the actual
product involved cannot be located. Boyd, 166 Ill. 2d at 200,
652 N.E.2d at 273. 
 Similarly, a recent decision by this court provides support
for plaintiff's position. In Murphy v. General Motors Corp., 285
Ill. App. 3d 278, 284, 672 N.E.2d 371, 375 (1996)(Zwick, J.,
dissenting), the plaintiffs alleged that Palos Auto & Glass had
negligently performed repairs on the driver's seat of a vehicle
that later slid backward off its track and injured the
plaintiffs. Following the accident, another repair shop disposed
of the seat and its frame. The trial court struck the affidavit
of plaintiffs' expert and granted summary judgment for Palos,
finding that "'[w]ithout the seat frame this case is thrown into
a speculative arena.'" Murphy, 285 Ill. App. 3d at 281, 672
N.E.2d at 373. On appeal, this court reversed. Although
plaintiffs' expert did not inspect the actual seat involved in
the incident, he reviewed the seat's design and specifications,
as well as the depositions of mechanics at both repair shops. 
The record contained enough circumstantial evidence to support
the expert's opinions that Palos' work caused the seat to
collapse and that Palos should have replaced the seat instead of
repairing it. These fact questions were for the jury, making
summary judgment for Palos improper. Murphy, 285 Ill. App. 3d at
283, 672 N.E.2d at 374-75.
 While Murphy did not involve a strict liability action as to
Palos, this court specifically looked to product liability cases
for guidance. "In such cases, 'the absence of the product at
trial is not fatal to the plaintiff's cause.'" Murphy, 285 Ill.
App. 3d at 282, 672 N.E.2d at 374, quoting Samansky, 208 Ill.
App. 3d at 389, 567 N.E.2d at 394. Furthermore, "experts in
product liability cases often rely on circumstantial evidence to
form their opinions as to whether a product is defective." 
Murphy, 285 Ill. App. 3d at 282, 672 N.E.2d at 374. Indeed,
"Illinois decisions have consistently held a plaintiff's proof
sufficient to present a triable factual issue when the plaintiff
has produced expert testimony that the defendant's product was
defective when it left the defendant's control and was a
proximate cause of the plaintiff's injury." Samansky, 208 Ill.
App. 3d at 391, 567 N.E.2d at 395.
 Turning to the present case, we must determine whether,
absent the helmet, plaintiff has introduced enough circumstantial
evidence to support each of the elements of his strict liability
action against Kucharik. We note that, unlike most of the cases
defendant relies upon, this is not a case where the trial court
excluded evidence of a defect or expert testimony as a sanction
pursuant to Supreme Court Rule 219(c) (134 Ill. 2d R. 219(c)). 
E.g., Shelbyville Mutual Insurance Co. v. Sunbeam Leisure
Products Co., 262 Ill. App. 3d 636, 634 N.E.2d 1319 (1994);
Graves v. Daley, 172 Ill. App. 3d 35, 526 N.E.2d 679 (1988);
Ralston v. Casanova, 129 Ill. App. 3d 1050, 473 N.E.2d 444
(1984); Stegmiller v. H.P.E., Inc., 81 Ill. App. 3d 1144, 401
N.E.2d 1156 (1980). Here, the court made no finding of bad faith
on plaintiff's part; the court did not strike the deposition
testimony and affidavits of plaintiff's expert; and the court did
not exclude the literature defendant distributed or the exemplar
helmet. All of this circumstantial evidence remained in the
record. Thus, this case is more in line with those where,
despite the absence of the product at issue, expert testimony
and/or circumstantial evidence that a defect existed was found
admissible. E.g., Murphy v. General Motors Corp., 285 Ill. App.
3d 278, 284, 672 N.E.2d 371, 375 (1996)(Zwick, J., dissenting); 
H & H Sand & Gravel Haulers Co. v. Coyne Cylinder Co., 260 Ill.
App. 3d 235, 248, 632 N.E.2d 697, 705 (1994); Samansky v. Rush-
Presbyterian-St. Luke's Medical Center, 208 Ill. App. 3d 377, 567
N.E.2d 386 (1990). Moreover, because the trial court here did
not impose a sanction or bar evidence pursuant to Rule 219(c)(134
Ill. 2d R. 219(c)), the applicable standard of review is not
whether the trial court abused its discretion, as defendant
claims. Instead, our review is de novo, and we must construe the
pleadings, admissions, affidavits, and depositions in the light
most favorable to plaintiff.
 Mindful of these considerations, we find that summary
judgment in defendant's favor is inappropriate. Specifically,
through the testimony of his expert and the circumstantial
evidence upon which plaintiff relies, he has established
sufficient evidence of a prima facie case in strict liability. 
We disagree with defendant's contention that "plaintiff's expert
has no basis for his proximate cause opinions about the helmet." 
Although Tudor did not examine plaintiff's helmet, his opinions
are supported by the record and tend to establish the three
necessary elements of a product liability claim. First, Tudor
opined that the helmet was unreasonably dangerous and not fit for
its intended use. He also averred that the polyester-filled
leather hairnet helmet did not meet industry standards for
protective headgear. Tudor reached these conclusions by studying
the helmet's design and specifications, as well as by inspecting
the exemplar helmet from the same line. Second, as the trial
court noted, plaintiff offered evidence of the product's
condition when it left defendant's control. Plaintiff did this
by acquiring the exemplar helmet and by introducing the
literature accompanying the helmet. According to plaintiff's
expert, defendant's literature was in direct conflict with
information and studies widely published in other literature
throughout the industry. Specifically, Tudor took issue with the
statements that promoted defendant's leather helmets as providing
superior protection to hard shell plastic helmets. Tudor found
such comparisons untrue, and at the very least, he interpreted
these statements as proof that Kucharik was aware of an existing
alternative design. Finally, plaintiff has introduced evidence
tending to establish that his injuries proximately resulted from
the helmet's defective design. Dr. Bartl and Dr. Feldstein
stated that plaintiff had multiple head injuries above the ear
and hairline as a result of his fall. Tudor testified that the
helmet provided insufficient protection when being worn in a
manner that defendant should have anticipated. In short,
plaintiff has raised genuine issues of material fact that compel
us to reverse the trial court's entry of summary judgment.
 Defendant insists, however, that it is entitled to judgment
as a matter of law because it will be unduly prejudiced in
defending its case. Defendant urges that plaintiff lost the
helmet and that he should bear the consequences of that through
the loss of his lawsuit. We disagree. Again, we stress that
this is not a sanctions case, and the record is extremely vague
as to what actually happened to the helmet. In any event, at the
summary judgment stage, where no sanctions have been imposed,
there is no need for us to speculate as to the cause or blame for
the helmet's loss. We are cognizant of the trial court's concern
about defendant's ability to defend its case. Yet, at trial,
defendant is free to cross-examine plaintiff extensively about
the loss of the helmet. Defendant will have the opportunity to
challenge Tudor about his opinions in the absence of the helmet. 
Defendant may introduce its own expert testimony that its helmet
did not suffer from a design defect. Defendant may also request
that the trial court give Illinois Pattern Jury Instruction,
Civil, No. 5.01, to inform the jury about how it may consider a
party's failure to produce evidence. H & H Sand & Gravel
Haulers, 260 Ill. App. 3d at 247, 632 N.E.2d at 705. In full,
that instruction states:
 "If a party to this case has failed to
 offer evidence within his power to produce,
 you may infer that the evidence would be
 adverse to that party if you believe each of
 the following elements:
 1. The evidence was under the control
 of the party and could have been produced by
 the exercise of reasonable diligence.
 2. The evidence was not equally
 available to an adverse party.
 3. A reasonably prudent person under
 the same or similar circumstances would have
 offered the evidence if he believed it to be
 favorable to him.
 4. No reasonable excuse for the failure
 has been shown." Illinois Pattern Jury
 Instructions, Civil, No. 5.01 (3d ed. 1992).
 Thus, as defendant will have ample opportunity to argue at
trial about the consequences of the helmet's loss, we cannot
justify taking this entire matter from the jury where genuine
issues of material fact remain. In the record before us,
plaintiff has maintained that he did not modify the helmet. 
Plaintiff's expert has stated that the entire line of Kucharik
leather helmets was unreasonably dangerous. This testimony, when
construed in the light most favorable to plaintiff, tends to
negate the possibility of secondary causes. At this juncture,
plaintiff has set forth a prima facie case that precludes summary
judgment in defendant's favor. It is for the trier of fact to
determine whether the helmet was defective when it left
defendant's control. It is also a question for the jury as to
whether that defect served as a proximate cause of plaintiff's
injuries. 
 Accordingly, for the reasons set forth above, we reverse the
judgment of the circuit court of Cook County and remand for
further proceedings. 
 Reversed and remanded.
 CERDA, J., and BURKE, J., concurring.